1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                               DISTRICT OF NEVADA

8                                      * * *

9   LYDIA LEE and CAROLYN BISSONETTE,    )
    individually and on behalf of others similarly )
10  situated,                            )
                                         )
11              Plaintiffs,              )
                                         )         3:10-CV-00326-LRH-WGC
12  v.                                   )
                                         )
13  ENTERPRISE LEASING COMPANY-          )         ORDER
    WEST, LLC, a Delaware LLC; and       )
14  VANGUARD CAR RENTAL USA, LLC, a      )
    Delaware LLC,                        )
15                                       )
                Defendants.              )
16  _____  )

17          Before the Court is Plaintiffs Lydia Lee ("Lee") and Carolyn Bissonette's ("Bissonette")

18  (collectively "Plaintiffs") Motion to Certify Class.  Doc. #79.[1]  Defendants Enterprise Leasing

19  Company-West, LLC ("Enterprise") and Vanguard Car Rental USA, LLC's ("Vanguard")

20  (collectively "Defendants") filed a Response (Doc. #82), to which Plaintiffs replied (Doc. #96).

21  **I.      Factual Background**

22          This is a putative class action filed on behalf of persons who rented cars from Enterprise

23  and Vanguard in the State of Nevada.  Although involving different parties, the action involves

24  substantially the same claims and issues that are presented in a separate case currently pending

25  before this Court, *Sobel v. Hertz Corp.*, No. 3:06-CV-545-LRH-RAM.  As in *Sobel*, the dispute in

26  _____

        [1]  Refers to the Court's docket number.

1   this case centers on whether Nevada Revised Statute ("NRS") 482.31575, prior to amendment on

2   October 1, 2009, allowed Defendants to charge customers a separate airport concession recovery

3   fee that was not included in the base rental rate as advertised and quoted to customers.[2]

4          The material facts at issue herein are largely undisputed.  In order to operate "on-airport,"

5   McCarran International Airport ("McCarran") in Las Vegas, Nevada, and Reno-Tahoe International

6   Airport ("RTI") in Reno, Nevada, require rental car companies, including Defendants, to pay a

7   "concession fee" of ten percent of their gross revenue received there.[3]  Doc. #74, ¶¶6, 11; Doc. #85,

8   ¶¶6, 11.  These fees are set by contractual agreements called "Concession Agreements."  Doc. #65

9   (Walker Decl.), ¶9; Doc. #66 (Best Decl.), ¶¶11, 16, 17, Ex. A, Ex. B, Ex. C, Ex. D.  Individual

10  lessees are not party to those agreements.  Doc. #74, ¶¶6, 11; Doc. #85, ¶¶6, 11.  Although the

11  airports impose this fee on rental car companies, as opposed to their customers (i.e., the short-term

12  lessees), Defendants pass along the expense to their customers by imposing a ten-percent surcharge

13  on the base rental rate as a so-called "airport concession recovery fee" ("ACRF").[4]  Doc. #74, ¶¶9,

---

15       [2]  As amended, NRS 482.31575 now expressly permits this practice.

16       [3]  When NRS 482.31575 went into effect in October 1989, Vanguard, operating as Alamo Rent-
17  a-Car ("Alamo"), was operating as an "off-airport" rental car company from a privately owned location
    near McCarran.  Doc. #66 (Best Decl.), ¶9.  Enterprise began operating as an off-airport rental car
18  company near McCarran in 1990.  *Id.*  In 2002, Defendants independently went on-airport at McCarran.
    *Id.*, ¶11.  In January 1998, Alamo began operating on-airport at RTI.  *Id.*, ¶16.  Enterprise began
19  operating on-airport at RTI in May 2002.  *Id.*, ¶17.

20       To the extent Defendants dispute whether all on-airport car rental companies in Nevada were
    subject to a minimum annual guarantee (Doc. #85, ¶6), the Court finds resolution of this issue, as well
21  as any dispute regarding the exact percentage of gross revenues constituting the concession fee at
    various Nevada airport locations, to be immaterial to a determination of the present Motion to Certify
22  Class.

23       [4]  On April 1, 2006, Lee rented a car from Enterprise at McCarran in Las Vegas, Nevada.  Doc.
24  #74, ¶3; Doc. #85, ¶3.  In addition to the base rental rate, Enterprise charged an additional $7.92, which
    Enterprise described on her rental documents as an "AP/Access 10.000%."  *Id.*  Similarly, on February
25  24, 2008, Bissonette rented a car from Alamo, at McCarran in Las Vegas, Nevada.  Doc. #74, ¶5; Doc.
    #85, ¶5.  In addition to the base rental rate, Bissonette was charged a "Concession Recovery Fee
26  @10.000%" in the amount of $40.60.  *Id.*

1   14; Doc. #85; ¶9, 14.  At all relevant times, Defendants "unbundled" the ACRF from their base

2   rental rates.  Doc. #74, ¶16; Doc. #85, ¶16.  In essence, Defendants advertised and quoted to

3   customers a base rental rate that did not include the separate ACRF that Defendants ultimately

4   charged their customers.  *Id.*

5   **II.      Legal Standards**

6          To qualify for class certification, the class must meet the requirements of Rule 23(a), and at

7   least one requirement of Rule 23(b).  Fed. Judicial Center, *Manual for Complex Litigation* § 21.131

8   (4th ed. 2004); Fed. R. Civ. P. 23(a), (b).  The proponents of the class bear the burden of

9   demonstrating that all the prerequisites for class designation are met.  *See In re No. Dist. of Cal.*

10  *Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 854 (9th Cir. 1982).  "The class

11  determination generally involves considerations that are enmeshed in the factual and legal issues

12  comprising the plaintiff's cause of action."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-

13  52 (2011) (quotation marks and citation omitted).

14                      **1.      Rule 23(a) Requirements**

15         Rule 23(a) states four threshold requirements applicable to all class actions.  Rule 23(a)

16  provides in full:

17              ***Prerequisites.*** One or more members of a class may sue or be sued as representative
             parties on behalf of all members only if:

18
             (1)    the class is so numerous that joinder of all members is
19                  impracticable;
             (2)    there are questions of law or fact common to the class;
20           (3)    the claims or defenses of the representative parties are typical of the
                    claims or defenses of the class; and
21           (4)    the representative parties will fairly and adequately protect the
                    interests of the class.
22

23  The Supreme Court refers to these elements as "numerosity," "commonality," "typicality," and

24  "adequacy of representation," respectively. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613

25  (1997).

26  ///

3

1          **2.      Rule 23(b) Requirements**

2          In addition, Plaintiffs must satisfy the requirements under Rule 23(b)(1), (2), or (3) in order

3   to maintain a class action.  Under Rule 23(b)(3)—the subsection chosen by Plaintiffs—certification

4   is appropriate if the court finds that "questions of law or fact common to the class members

5   predominate over any questions affecting only individual members, and that a class action is

6   superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R.

7   Civ. P. 23(b)(3).

8   **III.   Discussion**

9          **A.     Rule 23(a)**

10         Under Rule 23(a), Defendants challenge Plaintiffs' ability to establish typicality and

11  adequacy of representation. The Court briefly addresses the undisputed Rule 23(a)

12  requirements—numerosity and commonality—before turning to the challenged requirements.

13         **1.      Rule 23(a)(1)—Numerosity**

14         Rule 23(a)(1) requires that a class be so numerous that joinder of all members is

15  impracticable.  Plaintiffs need not state exact figures; instead, they can satisfy the numerosity

16  requirement by providing reasonable estimates.  *See In re Rubber Chemicals Antitrust Litigation*,

17  232 F.R.D. 346, 350 (N.D. Cal. 2005).

18         Here, the class period spans over five years in the case of Enterprise and over two years in

19  the case of Vanguard.  Because it was Defendants' standard practice to unbundle the ACRF, the

20  class would likely include nearly every renter during this time period.  Defendants have identified

21  over 1 million individuals as putative class members in connection with the failed Settlement

22  Agreement.[5]  *Sobel v. Hertz Corp.*, No. 3:06-cv-00545-LRH-RAM, Doc. #181 (Andra Decl.), ¶9.

23

---

24         [5] Factual determinations supporting a Rule 23 finding must be made by a preponderance of
    *admissible* evidence.  *In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305, 322-23 (3d Cir.
25  2008).  Fed. R. Evid. 408 prohibits the use of "statement[s] made during compromise negotiations
    about the claim" to establish the validity or amount of the claim. However, Rule 408 does not prohibit
26  the Court from considering Hertz's admission at the class certification stage because the Court is not

1  This number is large enough to make joinder impracticable.  *See Ansari v. N.Y. Univ.*, 179 F.R.D.

2  112, 114 (S.D.N.Y. 1998) ("courts will find that the 'numerosity' requirement has been satisfied

3  when the class comprises 40 or more members").  Accordingly, the Court finds that the numerosity

4  element is satisfied.

5  **2.      Rule 23(a)(2)—Commonality**

6  In order to satisfy the commonality element, Plaintiffs must show that there are questions of

7  law or fact which are common to the class.  The Ninth Circuit has described the commonality

8  element as follows:

9  Rule 23(a)(2) has been construed permissively.  All questions of fact and law need not
   be common to satisfy the rule.  The existence of shared legal issues with divergent
10  factual predicates is sufficient, as is a common core of salient facts coupled with
   disparate legal remedies within the class.

11

12  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  In this case, there are common

13  issues of both fact and law.  The putative class members' claims all arise out of Defendants'

14  standard practice of advertising, quoting, and charging unbundled ACRFs at Nevada airports.

15  Moreover, the putative class members' claims implicate common legal questions with respect to

16  the unbundled ACRFs, the resolution of which turn on the Court's interpretation of NRS

17  482.31575.  Thus, because the class members' claims arise from a standard practice and implicate

18  common legal questions, the Court finds that the commonality element is satisfied.

19  **3.      Rule 23(a)(3)—Typicality**

20  "Under the [Rule 23]'s permissive standards, representative claims are 'typical' if they are

21  reasonably co-extensive with those of absent class members; they need not be substantially

22  identical." *Id.* at 1020.  Typicality exists where the claims of the named plaintiffs arise from the

23  same event that gives rise to the claims of the other class members, and the named plaintiffs'

24  claims are based on the same legal theories as the other class members' claims.  *Rosario v.*

25  _____

26  determining liability or damages. *See In re General Motors Corp. Engine Interchange Litigation*, 594
   F.2d 1106, 1124 n.20 (7th Cir. 1979).

1    *Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992); *see also Hester v. Vision Airlines, Inc.*, 2009 WL

2    4893185, *4 (D. Nev. Dec. 16, 2009)*, aff'd.* 687 F.3d 1162 (9th Cir. 2012).

3          Here, the Court finds that Plaintiffs have satisfied the typicality requirement because their

4    claims flow from the same standard practice and course of conduct that also gives rise to the claims

5    of all other class members.  In *Sobel*, the Court determined that the plaintiffs had satisfied the

6    typicality requirement in nearly identical circumstances.  *See Sobel v. Hertz*, 291 F.R.D. 525, 542

7    (D. Nev. 2013) (finding typicality where plaintiffs' claim "allege[d] that the charging of the

8    unbundled ACRFs violated [NRS 482.31575]").  While the Court is keenly aware of the

9    differences between *Sobel* and this case—*Sobel* concerned only one Defendant, one brand, and one

10   named plaintiff for each of the two rentals at McCarran and RTI, while this case concerns two

11   defendants, three brands, and only two named plaintiffs for up to five different airports—the Court

12   finds them to be immaterial to a determination of whether Plaintiffs' claims are "reasonably co-

13   extensive" with those of absent class members.  Defendants contend that Plaintiffs have not shown

14   that their claims are typical of renters: (1) who rented cars at other airports; (2) who bought

15   optional products or services; and (3) who signed different rental agreements.  The Court will

16   address each of these issues in turn.

17         First, Defendants' argument that Plaintiffs' claims are not typical of class members who

18   rented at other airports is without merit.  Defendants support their assertion in this regard by

19   arguing that the ACRFs differed from airport to airport as a result of the airports' various minimum

20   concession fee contractual requirements.  As the Court has stated on numerous occasions,

21   Defendants' contractual obligation to pay concession fees—whether subject to a minimum amount

22   or not—is irrelevant.  *See, e.g.*, Doc. #102, pp. 6-7, 24.  Accordingly, any differences with respect

23   to Defendants' contractual obligations to pay concession fees to the airports will not defeat

24   typicality.  Moreover, because the Court rejected Defendants' due process defense, which

25   Defendants contend is unique to Plaintiffs because they rented from McCarran, this will not defeat

26   typicality either.  *See id.* at 10-20.  Similarly, the Court rejects Defendants' assertion that different

1  defenses apply to the claims of renters at airports other than McCarran as Defendants fail to offer

2  any indication of what those defenses might be.  Accordingly, the Court finds that Plaintiffs' claims

3  are typical of class members who rented from Defendants at McCarran and RTI, as well as other

4  airports in Nevada, including Henderson, North Las Vegas, and Elko.

5          Second, Defendants' argument that Plaintiffs' claims are not typical of class members who

6  bought optional products and services is also without merit.  Whether class members bought

7  optional products and services has no bearing on whether they were charged a separate ACRF in

8  addition to the base rate.  Moreover, Plaintiffs concede that the portion of ACRFs attributable to

9  optional products and services is not recoverable as restitution.  *See* Doc. #101, p. 14.  As such,

10  class members will only recover in restitution that portion of the ACRF attributable to gross

11  revenue from car rentals.  Any issues related to the proper method of calculating appropriate

12  restitution based on Defendants' gross revenue from car rentals will not defeat typicality.  *See*

13  *Balasanyan v. Nordstrom, Inc.*, 294 F.R.D. 550, 561 (S.D. Cal. 2013) (finding that issues affecting

14  proper calculation of damages for individual plaintiffs were insufficient to defeat typicality).

15  Accordingly, the Court finds that Plaintiffs' claims are typical of class members who were charged

16  a separate ACRF, including those class members who bought optional products and services.

17          Third, the Court rejects Defendants' argument that Plaintiffs' claims are not typical of class

18  members who entered into different rental agreements with Defendants.  Whether the specific

19  "severability" provision, upon which Plaintiffs rely in arguing for contract reformation, is present in

20  every agreement does not affect typicality.  Rather, the only relevant consideration in this regard is

21  whether class members' contracts contained a provision requiring them to pay a separate ACRF.

22  The Court determined that restitution was an available remedy in these circumstances because the

23  contractual provision requiring short-term lessees to pay a separate ACRF was unenforceable due

24  to illegality.  Doc. #102, pp. 25-28.  The Court did not rely on the "severability" provision in

25  Plaintiffs' contract in reaching this conclusion.  *Id.* at 27 n.20.  Accordingly, whether class

26  members' contracts included a "severability" provision is irrelevant.

1    Finally, to the extent Defendants assert that Bissonette's claim is not typical of class

2    members who rented from National, the Court is unpersuaded.  The fact that Bissonette rented a car

3    from Alamo, and does not recall having rented a car from National, is not relevant to the typicality

4    analysis.  Instead, the relevant question is whether the claims against Alamo and National arise

5    from the same events and are based on the same legal theories.  They are—the claims against both

6    Alamo and National arise from exactly the same conduct and rely on exactly the same legal theory.

7    That Alamo and National are different "brands" of the same legal entity and Defendant in this class

8    action—Vanguard—will not defeat typicality.  *See Chavez v. Blue Sky Natural Beverage Co.*, 268

9    F.R.D. 365, 377-78 (N.D. Cal. 2010) (finding plaintiff's claims against all Blue Sky beverages to

10   be reasonably co-extensive with those of absent class members, even where plaintiff did not buy

11   each product in the beverage line, because all claims arose out of the same allegedly false

12   statement, worded in several variations, on every Blue Sky beverage); *see also In re Chocolate*

13   *Confectionary Antitrust Litig.*, 289 F.R.D. 200, 217 (M.D. Penn. 2012) ("That customers paid

14   different prices or purchased different brands of products does not defeat typicality. . . . 'When a

15   class includes purchasers of a variety of products, a named plaintiff that purchases only one type of

16   product satisfies the typicality requirement if the alleged misrepresentations or omissions apply

17   uniformly across the different product types.'") (quoting *Marcus v. BMW of North America, LLC*,

18   678 F.3d 583, 599 (3d Cir. 2012) (collecting cases)).  Finally, whether class members chose Alamo

19   or National for different reasons has no bearing on the Court's determination of either liability or

20   restitution.  Accordingly, the Court finds that the typicality element has been satisfied.

21              **4.       Rule 23(a)(4)—Adequacy of Representation**

22   The fourth requirement of Rule 23(a) is that "the representative parties will fairly and

23   adequately protect the interests of the class . . . ."  Fed. R. Civ. P. 23(a)(4).  "Resolution of two

24   questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any

25   conflicts of interest with other class members and (2) will the named plaintiffs and their counsel

26   prosecute the action vigorously on behalf of the class?"  *Hanlon*, 150 F.3d at 1020.

8

1    Here, Defendants urge that certification of the proposed class must be denied because

2    Bissonette, who rented from Alamo, is not an adequate representative of National renters.  For the

3    same reasons that Bissonette's claims are typical of the class, the Court finds that Bissonette's

4    interests are coextensive with the entire Vanguard class, including those class members who rented

5    from National.  As such, the Court is satisfied that Bissonette and her counsel will prosecute this

6    action vigorously on behalf of all class members.  Furthermore, the Court is not aware of any

7    conflicts of interest between either Plaintiffs or their counsel on one hand and the proposed class on

8    the other.  Accordingly, the Court concludes that both Lee and Bissonette are adequate

9    representatives of the proposed class.

10    **B.    Rule 23(b)(3)**

11    In addition to satisfying Rule 23(a)'s requirements, parties seeking class certification must

12    show that the action is maintainable under Rule 23(b)(1), (2), or (3).  Plaintiffs in this case seek

13    certification under Rule 23(b)(3).  Under that rule, certification is appropriate if the court finds that

14    "questions of law or fact common to the class members predominate over any questions affecting

15    only individual members, and that a class action is superior to other available methods for fairly

16    and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  In evaluating superiority,

17    the rule directs the court to consider the following: (A) the class members' interests in individually

18    controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation

19    concerning the controversy already begun by or against class members; (C) the desirability or

20    undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely

21    difficulties in managing the class action.  *Id.*

22    **1.    Predominance**

23    Here, Defendants challenge Plaintiffs' contention that common issues predominate over

24    individual issues. Specifically, Defendants argue that "individual issues as to the availability and

25    amount of any remedies predominate over common issues, defeating the predominance

26    requirement[,] . . . rendering the case unmanageable for trial and defeating the requirement that a

1    class action be superior to other methods adjudicating the controversy."  Doc. #82, p. 2.  The Court

2    disagrees.  Restitution in this case flows directly from Defendants' violation of NRS 482.31575 and

3    can be determined on a class-wide basis as Defendants' conduct—the unlawful collection and

4    retention of ACRFs—is identical in all instances.  *See Leyva v. Medline Indus. Inc.*, 716 F.3d 510,

5    514 (9th Cir. 2013) (concluding that *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013), requires

6    only "that the plaintiffs must be able to show that their damages stemmed from the defendant's

7    actions that created the legal liability").  Each class member's right to restitution stems from the

8    Defendants' violation of NRS 482.31575 and the calculation thereof will be determined by

9    reference to the amount each class member was improperly charged.  Indeed, as Plaintiffs aver,

10   restitution can almost certainly be determined by reference to the amount each class member paid

11   for, and Defendants were enriched by, the improper ACRF charge.[6]  Finally, as the Court

12   recognized in *Sobel*, "while damages may differ from class member to class member, this alone

13   does not defeat class certification."  *Sobel*, 291 F.R.D. at 544; *see also Yokoyama v. Midland Nat.*

14   *Life Ins. Co.*, 594 F.3d 1087, 1089 (9th Cir. 2010) (class certification permitted even with

15   "potential existence of individualized damage assessments").

16        Defendants' attempt to complicate the issue of determining each class member's entitlement

17   to restitution is to no avail.  First, contrary to Defendants' repeated assertion, Plaintiffs are not

18   seeking a remedy at law.  Rather, as the Court determined in evaluating the parties' respective

19   Motions for Summary Judgment, Plaintiffs' entitlement to restitution is based in equity, not law.

20   Doc. #102, pp. 28-30.  Second, Plaintiffs' entitlement to restitution does not depend on the

21   "severability" clauses in their rental agreements.  *See id.* at 27 n.20.  As such, whether the class

22   members' contracts differ in this regard is immaterial.  Third, a determination of the class

23

24        [6] Plaintiffs appear to be referencing restitution in this regard, as opposed to damages. Plaintiffs

25   did not move for summary judgment on the issue of damages under NRS 482.31575. *See generally*
     Doc. #73. Moreover, the Court determined that Plaintiffs failed to establish that they were entitled to

26   damages and granted summary judgment in favor of Defendants on this particular issue. Doc. #102,
     pp. 20-22. Accordingly, Defendants' argument in this regard is moot.

1    members' entitlement to equitable restitution or the precise amount thereof does not depend on an

2    evaluation of whether each class member received the full benefit of the services for which they

3    paid; whether each class member paid fair market value for their rental; whether each class member

4    would have paid a different amount if the ACRF had not been stated and what that amount would

5    have been; the importance of price, convenience, loyalty club benefits to each class member; or the

6    options that were available to each class member at the time of reservation and/or rental as

7    Defendants suggest.  Finally, whether Defendants' agreements with each of the various Nevada

8    airports differ in their terms has no bearing on the Court's ability to determine restitution.  As the

9    Court has made abundantly clear, Defendants' contractual obligation to pay concession fees to the

10   airports—whether subject to a minimum fee or not—is separate and distinct from the ACRF that

11   Defendants impose upon short-term lessees.  Therefore, the Court concludes that common

12   questions of law or fact predominate over any individualized issues.  *See Amchem*, 521 U.S. at 625

13   (noting that predominance "is a test readily met" in consumer protection actions).

14                          **2.      Superiority**

15          Defendants further contend that because numerous unresolved individual issues

16   predominate over class issues and present difficulties in manageability, a class action is not a

17   superior method of adjudicating claims.  Again, the Court disagrees.  Because the Court rejected

18   Defendants' argument that numerous unresolved issues predominate over individual class issues,

19   Defendants cannot defeat superiority on this basis alone.  And while damages may differ from class

20   member to class member, this alone does not defeat class certification.  *See In re Visa*

21   *Check/MasterMoney Antitrust Litigation*, 280 F.3d 124, 140 (2d Cir. 2001); *see also Blackie v.*

22   *Barrack*, 524 F.2d 891, 905 (9th Cir. 1975).  As such, the Court does not anticipate the difficulties

23   in manageability that Defendants exhort.  On the contrary, a class action is particularly appropriate

24   where, as here, the alternative involves class members "filing hundreds of individual lawsuits that

25   could involve duplicating discovery and costs that exceed the extent of the proposed class

26   members' individual injuries."  *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168,

                                                    11

1176 (9th Cir. 2010).  Finally, judicial economy will be served by adjudicating the claims together in this forum.  Therefore, the Court finds that a class action is superior to other methods for fairly and efficiently adjudicating the present controversy.

**C.      Class Definition for Vanguard[7]**

Defendants argue that Plaintiffs cannot justify a June 3, 2007 start date for their proposed class of Alamo renters.  The Court agrees.  However, Plaintiffs amended their class definition for Vanguard to include "all persons . . . who rented a car at a Nevada airport . . . during the period from July 22, 2007, through September 30, 2009."  *See* Doc. #96, p. 12, n.9.  Indeed, former Plaintiff Mark Singer, who allegedly rented from Alamo, and who was later replaced by Bissonette, filed his complaint on July 22, 2010.[8]  *See* Doc. #4, ¶5.  "[T]he commencement of class action suspends the applicable statute of limitations" and, "[o]nce the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied." *Crown Cork & Seal Co. v. Parker*, 462 U.S. 345, 353-54 (1983) (quoting and citing *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974)).  As such, the Court is satisfied with Plaintiffs' amended proposed date range.

**IV.    Conclusion**

The Court finds that Plaintiffs have established that the requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—are satisfied in the instant case.  The Court further finds that a class action may be maintained pursuant to Rule 23(b)(3) because

---

[7] The Court finds that a three-year statute of limitations applies to this action.  *See* NRS 11.190(3)(a) (establishing a three-year limitations period for an action on liability created by statute). Defendants do not appear to challenge Plaintiffs' June 3, 2004 start date for their proposed class of Enterprise renters.  *See* Doc. #82, p. 16.  Because the three-year statute of limitations was tolled for three years pursuant to a tolling agreement between Lee and Enterprise, the Court finds appropriate Plaintiffs' June 3, 2004 start date for their proposed class of Enterprise renters.

[8] Courts routinely substitute class representatives years after a class action has been filed. *See, e.g.*, *In re Avon Sec. Litig.*, 1998 WL 834366, at *3-4 (S.D.N.Y. Nov. 30, 1998) (certifying substitute class representatives added nearly four years after filing of the complaint in a 10b-5 case).

12

1   Plaintiffs have established predominance and superiority.  Therefore, the Court shall grant

2   Plaintiffs' Motion to Certify Class.

3

4          IT IS THEREFORE ORDERED that Plaintiffs' Motion to Certify Class (Doc. #79) is

5   GRANTED.

6          IT IS SO ORDERED.

7          DATED this 25th day of June, 2014.

8          _____

9          LARRY R. HICKS
           UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

13