MELISSA HOLYOAK (*pro hac vice*)
    melissaholyoak@gmail.com
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW, No. 236
Washington, DC 20036
(573) 823-5377

ROBERT W. DELONG
    redelong@parsonsbehle.com
PARSONS BEHLE & LATIMER
50 West Liberty Street, No. 750
Reno, NV 89501
(775) 323-1601

*Attorneys for Objector William Andrews*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| LYDIA LEE, *et al.*<br><br>     Plaintiffs,<br><br>vs.<br><br>ENTERPRISE LEASING COMPANY-WEST, LLC, *et al.*,<br><br>     Defendants. | CASE No.:  3:10-cv-00326 LRH-WGC<br><br>**CLASS ACTION**<br><br>**OBJECTION BY WILLIAM ANDREWS TO PROPOSED SETTLEMENT AND FEE AGREEMENT**<br><br>Judge:     Hon. Larry R. Hicks |

# TABLE OF CONTENTS

TABLE OF CONTENTS....................................................................................................II

TABLE OF AUTHORITIES ...........................................................................................III

INTRODUCTION ............................................................................................................1

I.     THE OBJECTOR IS A MEMBER OF THE CLASS. ..............................................2

II.    THE COURT HAS A FIDUCIARY DUTY TO THE UNREPRESENTED MEMBERS OF THIS CLASS. ...........................................................................................................3

III.   FEDERAL LAW APPLIES TO CLASS COUNSEL'S FEE REQUEST....................4

IV.   THE CLASS ACTION FAIRNESS ACT REQUIRES HEIGHTENED SCRUTINY OF THIS COUPON SETTLEMENT AND REJECTION OF CLASS COUNSEL'S FEE REQUEST. ...................................................................................................................8

     A.     This is a coupon settlement subject to the restrictions of CAFA.......................8

     B.     Class counsel's fee request must be rejected because it is not based on the number of settlement coupons redeemed....................................................................10

     C.     The fee award should be deferred until the actual number of redeemed coupons is known........................................................................................................11

V.    THE SETTLEMENT CONTAINS MULTIPLE BLUETOOTH SIGNS OF SELF-DEALING. ...............................................................................................................12

     A.     Class counsel's request—estimated to exceed 50% of class recovery—is a disproportionate award that reflects self-dealing. ..............................................13

     B.     The settlement's "clear sailing" and "kicker" provisions show self-dealing....................17

     C.     Setting the claims deadline two months after the fairness hearing is further evidence of self-dealing. .................................................................................19

VI.   A MULTIPLIER GREATER THAN ONE IS INAPPROPRIATE. ...........................20

VII.  THIS COURT SHOULD NOT INFER SETTLEMENT APPROVAL FROM A LOW NUMBER OF OBJECTORS. ....................................................................................21

VIII. CONCLUSION ........................................................................................................23

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Amalgamated Meat Cutters & Butcher Workmen v. Safeway Stores, Inc.*,
   52 F.R.D. 373 (D. Kan. 1971)...........................................................................................22

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997) .........................................................3

*Berry v. Volkswagen Group of Amer.*, 397 S.W.3d 425 (Mo. 2013) ........................................7

*Briggs v. Hartford Fin. Servs. Group, Inc.*, Civ. No. 07-5190, 2009 U.S. Dist. LEXIS
   66777, 2009 WL 2370061 (E.D. Pa. July 31, 2009)) ...........................................................5

*Burlington N. R.R. Co. v. Woods*, 480 U.S. 1 (1987) ...........................................................7

*Dardarian v. OfficeMax N. Am., Inc.,* 2014 U.S. Dist. LEXIS 178463 (N.D. Cal. Dec. 30,
   2014) ..............................................................................................................................5

*Davis v. Cole Haan, Inc.*, 2013 U.S. Dist. LEXIS 151813 (N.D. Cal. Oct. 21, 2013) .......... 4-5

*Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012) ...................................................... *passim*

*Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546 (D.N.J. 2010) ("*Dewey I*"), *reversed on
   other grounds in Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170 (3d Cir.
   2012) ..............................................................................................................................5

*Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373 (D.N.J. 2012) ("*Dewey II*") .................5-7

*Diaz v. Trust Territory of Pacific Islands,* 876 F.2d 1401 (9th Cir. 1989)....................................4

*Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 380 (D. Mass. 1997) ..........12

*Ellis v. Edward D. Jones & Co.*, 527 F. Supp. 2d 439 (W.D. Pa. 2007) ............................. 21-22

*Eubank v. Pella Corp.,* 753 F.3d 718 (7th Cir. 2014) ...........................................................18

*Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434 (S.D. Iowa 2001)................................18

*Grunin v. International House of Pancakes,* 513 F.2d 114 (8th Cir. 1975) ...............................3

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). ...........................................12, 13

*In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011) ........................................18

*In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013) .............................1, 7, 15, 19

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)...................... *passim*

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 292 F. Supp. 2d 184 (D.
Me. 2003) ..........................................................................................................................12

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981) ..............................21

*In re Diet Drugs*, 582 F.3d 524 (3d Cir. 2009).............................................................................5

*In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013)......................................4, 7, 13, 14

*In re Gen. Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1137 (7th Cir. 1979) ............................................................................................................................................22

*In re Gen.Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768 (3d. Cir. 1995) ....................................................................................................................................... *passim*

*In re HP Inkjet Printer Litig.*, 716 F.3d 1173 (9th Cir. 2013) ........................................ *passim*

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) ..................................3

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 2015 U.S. App. LEXIS 3093 (9th Cir. Feb. 27, 2015) ...................................................................................................... 1, 9-10

*In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333 (3d Cir. 2010) ...............................................20

*In re Relafen Antitrust Litig.*, 360 F.Supp.2d 166 (D. Mass. 2005)............................................3

*In re Volkswagen and Audi Warranty Extension Litig.*, 692 F.3d 4 (1st Cir. 2012) ("*In re Volkswagen*") ......................................................................................................................... 6-8

*In re Washington Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291 (9th Cir. 1994)................3

*Johnson v. Comerica*, 83 F.3d 241 (8th Cir. 1996) ...................................................................14

*Ko v. Natura Pet Prods.*, No. C 09-02619 SBA, 2012 U.S. Dist. LEXIS 128615 (N.D. Cal. Sept. 10, 2012) ...................................................................................................................17

*Lobatz v. U.S. West Cellular of Cal., Inc.*, 222 F.3d 1142 (9th Cir. 2000) ..............................18

*Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677 (7th Cir. 1987) .....................................................................................................................................22

*McGee v. Continental Tire North America Inc.*, Civ. No. 06-6234, 2009 U.S. Dist. LEXIS 17199, 2009 WL 539893 (D.N.J. Mar. 4, 2009)................................................................ 5

*Michel v. Wm Healthcare Solutions*, No. 1:10-cv-638, 2014 U.S. Dist. LEXIS 15606 (S.D. Ohio Feb. 7, 2014) ..........................................................................................................18

*Monteferrante v. Container Store*, 2015 U.S. Dist. LEXIS 13212 (D. Mass. Feb. 4, 2015) ...................16

*Moody v. Sears Roebuck & Co.*, 664 S.E.2d 569 (N.C. App. 2008) ........................................16

*Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014) .........................................................7, 13, 16, 18

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986) ......................20

---

OBJECTION BY WILLIAM ANDREWS TO PROPOSED SETTLEMENT AND FEE AGREEMENT

*Perdue v. Kenny A.*, 130 S. Ct. 1662, 1669 (2010) ...................................................................20

*Redman v. Radioshack Corp.*, 768 F.3d 622 (7th Cir. 2014)......................................1, 9, 15, 16

*Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277 (7th Cir. 2002) .............................................3

*Shady Grove Orthopedic Assoc v. Allstate Ins. Co.*, 559 U.S. 393 (2010) ...........................5, 7

*Silber v. Mabon,* 957 F.2d 697 (9th Cir. 1992) ...................................................................... 3-4

*Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990)....................14

*Sobel v. Hertz Corp.*, No. 3:06-cv-00545-LRH-RAM, 2011 WL 2559565, 2011 U.S. Dist. LEXIS 68984, *36 (D. Nev. Jun. 27, 2011) ............................................................... *passim*

*Sobel v. Hertz Corp.*, 2014 U.S. Dist. LEXIS 143926 (D. Nev. Oct. 9, 2014) ........................20

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003). ...................................4, 6, 12, 13

*Synfuel Techs. v. DHL Express*, 463 F.3d 646 (7th Cir. 2006) (Wood, J.) ................1, 8, 10, 11

*True v. American Honda Co.*, 749 F. Supp. 2d 1052 (C.D. Cal. 2010)....................................4, 8

*Union Fidelity Life Ins. Co. v. McCurdy*, 781 So.2d 186 (Ala. 2000) ......................................16

*Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 Fed. Appx. 496, 500 (6th Cir. 2011) ....20

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) ...........................................5

*Vought v. Bank of Am.*, 901 F. Supp. 2d 1071 (C.D. Ill. 2012) ................................................21

*Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980) .................................................................7

*Weeks v. Kellogg Co.*, No. 09-cv-8102, 2011 U.S. Dist. LEXIS 155472 (C.D. Cal. Nov. 23, 2011) .............................................................................................................................20

*Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518 (1st Cir. 1991) .........................17

## Rules and Statutes

15 U.S.C. §§ 77z-1(a)(6); 78u-4(a)(6) ......................................................................................6

28 U.S.C. § 1711 note § 2(a)(3)(A) ..........................................................................................8

28 U.S.C. § 1712................................................................................................5, 8, 10

28 U.S.C. § 1712(a) ..........................................................................................1, 8, 10, 15

Fed. R. Civ. Proc. 23(a) ..........................................................................................................4

Fed. R. Civ. Proc. 23(a)(4) ......................................................................................................18

Fed. R. Civ. Proc. 23(e) ...................................................................................................3, 4, 7, 8

Fed. R. Civ. Proc. 23(h) .................................................................................................... *passim*


**Other Authorities**

AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.05,
    comment a .........................................................................................................................22

AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.05,
    comment b .........................................................................................................................13

AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.05(c)
    (2010) ...................................................................................................................................4

Brickman, Lester, LAWYER BARONS 522-25 (2011) .....................................................................18

Coffee, Jr., John C., *The Regulation of Entrepreneurial Litigation: Balancing Fairness
    and Efficiency in the Large Class Action*, 54 U. Chi. L. Rev. 877, 883 (1987) ................12

Eisenberg, Theodore & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class
    Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529 (2004) .....................22

Fisher, Daniel, "Odds of a Payoff in Consumer Class Action? Less Than a Straight Flush,"
    Forbes, May 8, 2014, www.forbes.com/sites/danielfisher/2014/05/08/odds-of-a-
    payoff-in-consumer-class-action-less-than-a-straight-flush/ ...............................................16

Leslie, Christopher R., *The Significance of Silence: Collective Action Problems and Class
    Action Settlements*, 59 FLA. L. REV. 71 (2007) ....................................................................21

Christopher R. Leslie, *A Market-Based Approach to Coupon Settlements in Antitrust and
    Consumer Class Action Litigation*, 49 UCLA L. Rev. 991, 1049 (2002) ...........................11

Miller, Geoffrey P. & Lori S. Singer, *Nonpecuniary Class Action Settlements*, 60 L. &
    CONTEMP. PROBS. 97, 108 (1997) .......................................................................................11

Nagareda, Richard A., *Class Actions in the Administrative State: Kalven and Rosenfield
    Revisited*, 75 U. CHI. L. REV. 603, 644 (2008) ....................................................................12

Newberg, Herbert & Alba Conte, Newberg on Class Actions § 13:20 (4th ed. 2002)..............3

Notes of Advisory Committee to 2003 Amendments to Rule 23 ........................................6, 12

S. Rep. No. 109-14 (2005) .........................................................................................................9

Silver, Charles, *Due Process and the Lodestar Method: You Can't Get There From Here*,
    74 TUL. L. REV. 1809, 1839 (2000) ......................................................................................18

Tharin, James & Brian Blockovich, *Coupons and the Class Action Fairness Act*, 18 GEO.
J. LEGAL ETHICS 1443, 1445 (2005) ...........................................................................................16

## INTRODUCTION

This is a coupon settlement: class members that file a claim can choose from cash or a voucher for a car rental. The settling parties argue that the Class Action Fairness Act ("CAFA") is inapplicable because the voucher provides an entire product rather than a discount. Not so. The voucher covers the base fee, but excludes taxes and airport fees and must be used within a certain time. And more importantly, the Ninth Circuit's recent decision in *In re Online DVD-Rental Antitrust Litigation* demonstrates that this is the exact kind of coupon settlement that CAFA was trying to restrict. 779 F.3d 934, 2015 U.S. App. LEXIS 3093, *33-*37 (9th Cir. Feb. 27, 2015). Accordingly, CAFA requires heightened judicial scrutiny of fairness, *Synfuel Technologies v. DHL Express (USA)*, 463 F.3d 646, 654 (7th Cir. 2006), and it also requires that any attorney fee award attributable to the coupons must be "based on the value to class members of the coupons that are redeemed." 28 U.S.C. § 1712(a) (emphasis added); *accord In re HP Inkjet Printer Litig.*, 716 F.3d 1173 (9th Cir. 2013) ("*HP Inkjet*"). The settlement fails to comply with these restrictions.

Further, class counsel seeks an excessive $2.6 million in attorneys' fees. Class counsel defends the request by arguing that it is only 3.5% of the $70 million *available* vouchers or 12.5% of the $20 million *available* cash. Class counsel's arguments are wrong in several respects. As an initial matter, in determining the reasonableness of attorneys' fees, the court must review "the ratio of (1) the fee to (2) the fee plus what the class members ***received***." *Redman v. Radioshack Corp.*, 768 F.3d 622, 635 (7th Cir. 2014) (emphasis added); *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 170 (3d Cir. 2013) ("[C]ourts need to consider the level of direct benefit provided to the class in calculating attorneys' fees."). Class counsel's calculations do not reflect what was actually received by the class because (1) the settling parties have scheduled the claims deadline for 60 days after the fairness hearing, depriving this Court of critical information as to the number of cash claims and the number of voucher claims; and (2) class counsel falsely presumes both 100% claims rate and 100% redemption rate of the vouchers. As this Court previously held, "[b]ecause redemption rates have a direct and potentially devastating impact on the actual value received by the class, such lack of evidence prevents any reasoned assessment of the settlement's actual value to the class." *Sobel v. Hertz Corp.*, No. 3:06-cv-00545-LRH-RAM, 2011 WL 2559565, 2011 U.S. Dist.

LEXIS 68984, *36 (D. Nev. Jun. 27, 2011).

Based on the 130,000 claims made to date, and assuming an unlikely 100% redemption rate of the claimed settlement vouchers, class counsel's $2.6 million fee would equal more than 44% of class recovery. Class counsel's request is "clearly excessive" under Ninth Circuit law. *See Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012). Class counsel's excessive fee request is especially problematic where, as here, class counsel has negotiated a separate fee award for itself combined with a clear-sailing agreement precluding the defendant from challenging the fee. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) ("*Bluetooth*") (combination of disproportionate fee award, clear-sailing agreement, and reversion of excessive fees to defendant is indicia of self-dealing).

For these reasons, the settlement must be rejected. The attorneys' fees calculation should be postponed until this Court has information as to the number of cash claims and the number of vouchers redeemed.

## I.   THE OBJECTOR IS A MEMBER OF THE CLASS.

Objector William Andrews is a United States resident who, on or about January 30, 2008 through January 31, 2008, rented a car from Alamo Rent A Car at the Las Vegas McCarran Airport. *See* Declaration of William Andrews, ¶ 3 (attached at Exhibit 1). Andrews also rented a car from Alamo Rent A Car at the Las Vegas McCarran Airport on or about April 29, 2008. *Id.* ¶ 4. Andrews also rented a car from Alamo Rent A Car at the Las Vegas McCarran Airport on or about June 9 through June 13, 2008. *Id.* ¶ 5. Andrews is not a defendant in this action, nor related to or affiliated with the defendants in this action, or their legal representatives, heirs, successors-in-interest, or assigns. *Id.* ¶ 6. He is thus a member of the Vanguard Class in this action and has standing to object to the settlement. *Id.* Andrews' address is 15110 SW Gibraltar Ct., Beaverton, OR 97007 and his email address is andrebd@comcast.net. *Id.* ¶ 2. This brief explains why the settlement is, in his judgment, objectionable and not in the best interest of the class.

Andrews intends to appear through his attorney Melissa A. Holyoak from the Center for Class Action Fairness at the fairness hearing, in the above-captioned matter, scheduled for May 12, 2015 at 10:00 a.m. Andrews wishes to discuss matters raised in this Objection. Melissa A. Holyoak has complied with

1
2   LR IA 10-2. Andrews retained the Center to object to this settlement and had previously retained the Center
3   to successfully object on his behalf in *Sobel v. Hertz*, No. 06-cv-545, in this Court. *See* Declaration of
4   William Andrews, ¶ 7. Andrews intends to call no witnesses at the fairness hearing, but reserves the right
5   to make use of all documents entered on to the docket by any settling party or objector. Andrews also
6   reserves the right to cross-examine any witnesses who testify at the hearing in support of final approval.

7   ## II.   THE COURT HAS A FIDUCIARY DUTY TO THE UNREPRESENTED MEMBERS OF THIS CLASS.

8        A district court must act as a "fiduciary for the class," "with 'a jealous regard'" for the rights and
9   interests of absent class members. *In re Mercury Interactive Corp. Sec. Litig*., 618 F.3d 988, 994–95 (9th
10  Cir. 2010) (quoting *In re Washington Pub. Power Supply Sys. Lit.,* 19 F.3d 1291, 1302 (9th Cir. 1994)).
11  "Both the United States Supreme Court and the Courts of Appeals have repeatedly emphasized the
12  important duties and responsibilities that devolve upon a district court pursuant to Rule 23(e) prior to final
13  adjudication and settlement of a class action suit." *In re Relafen Antitrust Litig.*, 360 F.Supp.2d 166, 192–
14  94 (D. Mass. 2005), citing *inter alia Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617, 623 (1997) ("Rule
15  23(e) protects unnamed class members from 'unjust or unfair settlements' agreed to by 'fainthearted' or
16  self-interested class 'representatives.'"); *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 279–80 (7th Cir.
17  2002) ("district judges [are] to exercise the highest degree of vigilance in scrutinizing proposed settlements
18  of class actions" prior to settlement).

19       "Under Rule 23(e) the district court acts as a fiduciary who must serve as a guardian of the rights
20  of absent class members.... [T]he court cannot accept a settlement that the proponents have not shown to
21  be fair, reasonable and adequate." *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*
22  ("*In re GM Pick-Up*"), 55 F.3d 768, 785 (3d. Cir. 1995) (quoting *Grunin v. International House of*
23  *Pancakes,* 513 F.2d 114, 123 (8th Cir. 1975)). "A trial court has a continuing duty in a class action case to
24  scrutinize the class attorney to see that he or she is adequately protecting the interests of the class." Herbert
25  Newberg & Alba Conte, Newberg on Class Actions § 13:20 (4th ed. 2002). "Both the class representative
26  and the courts have a duty to protect the interests of absent class members." *Silber v. Mabon,* 957 F.2d 697,

27                                                    3
28  ───────────────────────────────────────────────────
    OBJECTION BY WILLIAM ANDREWS TO PROPOSED SETTLEMENT AND FEE AGREEMENT

701 (9th Cir. 1992). *Accord Diaz v. Trust Territory of Pacific Islands,* 876 F.2d 1401, 1408 (9th Cir. 1989) ("The district court must ensure that the representative plaintiff fulfills his fiduciary duty toward the absent class members").

There should be no presumption in favor of settlement approval: "[t]he proponents of a settlement bear the burden of proving its fairness." *True v. American Honda Co.*, 749 F. Supp. 2d 1052, 1080 (C.D. Cal. 2010) (*citing* 4 Newberg on Class Actions § 11:42 (4th ed. 2009)). *Accord* AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.05(c) (2010) ("*ALI Principles*").

It is insufficient that the settlement happened to be at "arm's length" without express collusion between the settling parties; because of the danger of conflicts of interest, third parties must monitor the reasonableness of the settlement as well. "While the Rule 23(a) adequacy of representation inquiry is designed to foreclose class certification in the face of 'actual fraud, overreaching or collusion,' the Rule 23(e) reasonableness inquiry is designed precisely to capture instances of unfairness not apparent on the face of the negotiations." *Bluetooth*, 654 F.3d at 948 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003)). "'[C]ourts must be particularly vigilant'" not only for explicit collusion, but also for "'subtle signs that class counsel have allowed pursuit of their own self-interests … to infect the negotiations.'" *In re Dry Max Pampers Litig.*, 724 F.3d 713, 718 (6th Cir. 2013) ("*Pampers*") (quoting *Dennis*, 697 F.3d at 864).

## III.   FEDERAL LAW APPLIES TO CLASS COUNSEL'S FEE REQUEST.

Objector Andrews is seeking rejection of the settlement and of class counsel's fee request. Class counsel argue that federal law does not apply to their request for attorneys' fees. *See* Plaintiffs' Motion for Award of Attorneys' Fees and Incentive Awards ("Fee Motion"), Dkt. 125 at 7. This is wrong for two reasons: *First*, federal law governs because state law "runs counter to a federal statute." *Davis v. Cole Haan, Inc.*, 2013 U.S. Dist. LEXIS 151813, *3-4 (N.D. Cal. Oct. 21, 2013). *Davis* involved California claims in a case premised on diversity jurisdiction. *Id.* at *3. The court held that while state law would

normally govern the determination of attorneys' fees,[1] CAFA "governs the calculation of attorneys' fees for coupon settlements in class actions." *Id.* at *3-*4 (citing 28 U.S.C. § 1712); *see also Dardarian v. OfficeMax N. Am., Inc.,* 2014 U.S. Dist. LEXIS 178463, at *11 (N.D. Cal. Dec. 30, 2014) (rejecting class counsel's request for application of California law to fee request and holding that CAFA required fees to be based on the value of redeemed coupons). Because this is a coupon settlement under CAFA, federal law applies to the determination of class counsel's fee request.

*Second*, even if this were not a CAFA settlement, federal law would still apply here because class counsel's requested "fee award is being made by agreement of the parties" under Fed. R. Civ. P. 23(h).[2] *Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373, 391 (D.N.J. 2012) ("*Dewey II*"). "If, [] the fee award has occurred as a result of the parties' private agreement in a federal class action settlement, no fee shifting occurs." *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 557 (D.N.J. 2010) ("*Dewey I*"), *reversed on other grounds in Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170 (3d Cir. 2012). In *Dewey II*, the district court explained that "[n]o fee shifting statute is triggered because no 'party is compelled by statute to bear the opposing party's fees." 909 F. Supp. 2d at 391 (quoting *In re Diet Drugs*, 582 F.3d 524, 540 (3d Cir. 2009)). "[W]here the defendant agrees to pay fees and does not admit liability, federal class action law determines the fee award." *Id.* (citing *McGee v. Continental Tire North America Inc.*, Civ. No. 06-6234, 2009 U.S. Dist. LEXIS 17199, 2009 WL 539893, at *13 (D.N.J. Mar. 4, 2009); *Briggs v. Hartford Fin. Servs. Group, Inc.*, Civ. No. 07-5190, 2009 U.S. Dist. LEXIS 66777, 2009 WL 2370061, at *14, 15 n.92 (E.D. Pa. July 31, 2009)).

Federal Rule of Civil Procedure 23(h) permits only the award of "reasonable" fees, not unreasonable ones. *Shady Grove Orthopedic Assoc v. Allstate Ins. Co.*, 559 U.S. 393 (2010) dictates that

---

[1] *Davis* relied on *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) for this conclusion, yet *Vizcaino* preceded the federalization of class action attorney fee procedure through the adoption of Rule 23(h) in 2003. As *Shady Grove Orthopedic Assoc v. Allstate Ins. Co.* explains, Rule 23(h) standards trump conflicting state law as long as the standard is "rationally capable of classification" as procedural. 559 U.S. 393, 406 (2010).

[2] Of course, the reasonableness of the fee amount cannot be determined by deferring to the agreement of the parties. *Bluetooth*, 654 F.3d at 941 (citing cases).

5

OBJECTION BY WILLIAM ANDREWS TO PROPOSED SETTLEMENT AND FEE AGREEMENT

an inconsonant state law cannot override the procedural commands of Rule 23. The Ninth Circuit has demarcated the boundaries of Rule 23 reasonableness: "[e]ven under the lodestar method, the district court must adjust the amount of any fees award to account for the degrees of success class counsel attained." *HP Inkjet*, 716 F.3d at 1186 n.18 (internal quotation omitted); *see also* Notes of Advisory Committee on 2003 Amendments to Rule 23 ("it may be appropriate to defer some portion of the fee award until actual payouts to class members are known" (emphasis added)); *id*. ("fundamental focus is the result actually achieved for class members" (emphasis added); *id*. (citing 15 U.S.C. §§ 77z-1(a)(6); 78u-4(a)(6)) (fee award should not exceed a "reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class" (emphasis added)). Thus, to the extent that Nevada fee shifting law would permit plaintiffs to seek a lodestar award without consideration of class benefit, such procedure would be considered unreasonable under 23(h) and thus must yield to federal law.

Class counsel argue that Nevada law should apply based on the holding of *In re Volkswagen and Audi Warranty Extension Litig*., 692 F.3d 4 (1st Cir. 2012) ("*In re Volkswagen*"). *Dewey II* rejected this same argument and held that *In re Volkswagen* was inapplicable for two reasons. First, the settling parties in *In re Volkswagen* case had not agreed to a specific amount of attorneys' fees or a method for calculating fees, and thus the district court below had used state substantive contract law to interpret ***the parties' settlement agreement***. *Dewey II*, 909 F. Supp. 2d at 391 (emphasis added) (citing *In re Volkswagen*, 692 F.3d at 15). Where no fee amount is set, there is diminished possibility of a *quid pro quo* sellout of class interests (viz. "unreasonably high" class counsel fees in exchange for "the defendant obtain[ing] an economically beneficial concession with regard to the merits provisions…" *Staton*, 327 F.3d at 964. *Dewey II* explained that unlike *In re Volkswagen*, it was not tasked with interpreting a contract under state law, but only whether the amount agreed to by the parties was "a permissible award as defined by Rule 23(h)." *Dewey II*, 909 F. Supp. 2d at 392. And second, *Dewey II* held that the *In re Volkswagen* case was inapplicable because First Circuit law would have mandated the lodestar approach in a case involving a segregated fee fund (as opposed to a common fund); Third Circuit precedent permitted percentage-of-recovery even if fees were placed in a segregated fund. *Id*. (citing *In re Volkswagen*, 692 F.3d at 16-17).

OBJECTION BY WILLIAM ANDREWS TO PROPOSED SETTLEMENT AND FEE AGREEMENT

*In re Volkswagen* is inapposite here for the same reasons set forth in *Dewey II*. First, the settling parties here agreed to a specific amount of fees: class counsel could request fees up to $2,500,000 and defendants agreed not to oppose such request. Settlement Agreement, Dkt. 113-1, § 2.3. There is no need for this court to interpret the contract under state substantive law as in *In re Volkswagen*. Instead, this court must determine whether this agreed-upon request complies with Rule 23(h). This is a federal question. Second, Ninth Circuit law permits percentage-of-recovery even if the case involves a constructive common fund. *See Bluetooth*, 654 F.3d at 944-45. Indeed, it mandates the constructive common fund includes coupon relief that forms the predicate for the fee award. *HP Inkjet*, 716 F.3d at 1186.

The fallacy of the argument for application of state law can be seen with a recent Missouri state-court case. *Berry v. Volkswagen Group of Amer.*, 397 S.W.3d 425 (Mo. 2013). A class action settled for a claims process that resulted in a total payout to the class of $125,261. *Id.* at 428. The district court awarded the attorneys twice their lodestar, $6,174,640, or nearly 5000% of what the class received. *Id.* at 429. The Missouri Supreme Court held that such a disproportionate award was within the district court's discretion under Missouri state law. *Id.* at 432. Such a result would be plainly incorrect under federal law. *Bluetooth* holds that the Rule 23(e) inquiry must consider whether the attorneys have negotiated a fee for themselves disproportionate to class relief. 654 F.3d at 947. *Accord Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014); *In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013); *In re Baby Products Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013). According to plaintiffs' argument, self-dealing class counsel can easily evade the Rule 23(e) and Rule 23(h) protections for the class by demanding that a settlement—even a settlement like this one involving consumers from potentially all fifty states—be interpreted under Missouri state law. *Shady Grove* and common sense says otherwise.

The use of Missouri state law, or any other state law permitting a disproportionate fee award, would be a "direct collision" with federal procedure—Rule 23(e)—regarding settlement and attorney-fee fairness. *Cf. Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 4-5 (1987) (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749-50 & n. 9 (1980)). Thus, *In re Volkswagen*, 692 F.3d at 16, is incorrect when it concludes

the exact opposite: it fails to consider the effect of an oversized fee award on settlement fairness, something that the Ninth, Third, Sixth, and Seventh Circuits have correctly done.

Accordingly, federal law applies and requires reversal of this settlement and rejection of the fee agreement because it fails to comply with Rule 23(e), 23(h) and 28 U.S.C. § 1712.

## IV.  THE CLASS ACTION FAIRNESS ACT REQUIRES HEIGHTENED SCRUTINY OF THIS COUPON SETTLEMENT AND REJECTION OF CLASS COUNSEL'S FEE REQUEST.

Low-value settlements where "counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value" were a central legislative motivation of the Class Action Fairness Act ("CAFA"). 28 U.S.C. § 1711 note § 2(a)(3)(A). Coupon settlements are disfavored because they often fail to disgorge illegal profits and instead force future business with the defendant. *Synfuel*, 463 F.3d at 654. Because of the inherent dangers of coupon settlements, CAFA requires a district court to apply "heightened judicial scrutiny," *id.*, and to limit the attorneys' fee award based "on the value to class members of the coupons that are redeemed," 28 U.S.C. § 1712(a); *HP Inkjet*, 716 F.3d at 1186 (Section 1712 requires attorneys' fees to be calculated based on "*actual* value of the class relief, as measured by the coupons' redemption value"). Class counsel's fee request fails to comply with CAFA's restrictions.

### A.  This is a coupon settlement subject to the restrictions of CAFA.

Class counsel argues that this is not a coupon settlement because (1) the case provides a cash option; and (2) the vouchers entitle class members to an "absolutely *free* product." Fee Motion, Dkt. 125 at 16. Both of these arguments are wrong.

*First*, offering a cash option does not make the voucher any less of a coupon. Whether the voucher is a coupon is independent of other types of relief offered to the class. *See True*, 749 F. Supp. 2d  at 1069 n.20 (rejecting argument that proposed settlement was not a "coupon settlement" since "other relief" was involved); *cf.* 28 U.S.C. § 1712(c) (if proposed settlement includes both coupons and other relief, fee restrictions for coupon settlements apply to portion of the recovery of the coupons). Class counsel's interpretation would improperly excise § 1712(c) from the statute.

*Second*, class counsel's argument that the vouchers are not coupons under CAFA because they offer an entirely free product is factually and legally incorrect. Factually, the voucher is not an entirely free product because the voucher offers "free time and mileage charges for one free rental day" and that the "*discount* will be applied at the time of rental." Exhibit C to Settlement Agreement ("Voucher"), Dkt. 113-1 at 53 (emphasis added). "This voucher may be used in conjunction with *other discounts*." *Id.* (emphasis added). If the voucher really provided an entirely free product, why would additional discounts be needed? The voucher terms and conditions show that the voucher provides a *discount* covering only the rental base rate and it does not cover "taxes, surcharges, airport access and related fees, excess mileage fees, one-way or drop charges, vehicle licensing fees, or optional products and services." *Id.* The terms of the voucher demonstrate that contrary to class counsel's argument, the voucher offers a discount, not an entire product.

Legally, class counsel's argument fails because the voucher is a coupon under Ninth Circuit law. *In re Online DVD-Rental Antitrust Litigation* recently considered the application of CAFA to a class action providing $12 Walmart gift cards. 2015 U.S. App. LEXIS 3093, *33-*37.[3] The Ninth Circuit held that the Walmart gift cards were not coupons because they were not the type of coupon settlement that Congress was attempting to restrict. *Id.* at *33. Turning to legislative history, the court reviewed the twenty-nine examples of problematic coupon settlements. *Id.* at *32. Notably, several of those examples include settlements involving an "entire product" contrary to the distinction class counsel tries to make here. *See* S. Rep. No. 109-14 (2005) (examples include a free crib repair kit, free spring water, and free golf gloves or golf balls); *see also Redman*, 768 F.3d at 635 (holding that CAFA applies to coupons that provide either a "discount off the full price of an item or is equal to (or for that matter more than) the item's full price").

Based on the legislative history, the Ninth Circuit held that Congress was concerned with settlements providing a discount on purchases from the settling defendant that "require class members to hand over more of their money before they can take advantage of the coupon, and they often are only valid

---

[3] Appellant class members in *In re Online DVD* are seeking en banc review to reconcile the Ninth Circuit's holding that Walmart gift cards are not CAFA coupons with the Seventh Circuit's holding that RadioShack gift cards are CAFA coupons. *See Redman*, 768 F.3d at 635-36.

OBJECTION BY WILLIAM ANDREWS TO PROPOSED SETTLEMENT AND FEE AGREEMENT

for select products or services." *Id.* at *33-34. The court found that the Walmart gift cards were different because they provided class members $12 to a "giant, low-cost retailer," with whom a class member "need not spend any of his or her own money and can choose from a large number of potential items to purchase." *Id.* at 34. The court distinguished the Walmart gift cards from the e-credits in *In re HP Inkjet Printer Litigation*, 716 F.3d at 1176, and the pre-shipped envelopes in *Synfuel*, 463 F.3d at 654, because the gift cards allowed the class members to purchase "a large number of products from a large retailer." *In re Online DVD*, 2015 U.S. App. LEXIS 3093, *36-37.

Under *In re Online DVD,* this is the very type of settlement CAFA was seeking to restrict. The voucher here is a discount requiring class members to hand over more money to defendants before they can use it, *see* Voucher, Dkt. 113-1 at 53, and the voucher here is for one product or service, i.e., discount on base rental fee, *see id.*, rather than the potential purchase of a large number of products. Further, unlike the Walmart gift cards, the vouchers here have an expiration date. *See* Voucher, Dkt. 113-1 at 53 ("must be used on a rental that begins on or before TBD"); *see In re Online DVD*, 2015 U.S. App. LEXIS 3093, *35 (distinguishing the gift cards from coupons because they were "freely transferrable" and "do not expire"). Accordingly, this is a coupon settlement subject to CAFA's restrictions.

## B.   Class counsel's fee request must be rejected because it is not based on the number of settlement coupons redeemed.

The law requires that attorneys' fees "shall be based on the value to class members of the coupons that are redeemed" rather than the number of coupons issued. 28 U.S.C. § 1712(a); *In re HP Inkjet Printer Litig.*, 716 F.3d at 1186 (Section 1712 requires attorneys' fees to be calculated based on "*actual* value of the class relief, as measured by the coupons' redemption value"). This coupon settlement provides that upon successful submission of a claim form, class members will receive either a cash payment (80% of airport concession recovery fee ("ACRF") fee paid by class member or minimum of $5), or one or more rental vouchers with defendants. *See* Settlement, Dkt. 113-1 at 9-10. Class counsel's $2.6 million fee request, however, treats the vouchers as cash without regard for the actual number that will be redeemed. This is a violation of the plain language of the statute and requires rejection.

OBJECTION BY WILLIAM ANDREWS TO PROPOSED SETTLEMENT AND FEE AGREEMENT

Class counsel here argue that the $2.6 million request is reasonable because they have achieved $20 million in cash for the class members and $71 million in vouchers for the class members. *See* Fee Motion, Dkt. 125 at 12. Plaintiffs' $71 million voucher valuation assumes both a 100% claims rate and a 100% redemption rate of the vouchers.[4] Settling parties use coupons to inflate the apparent value of the proposed settlement by claiming the coupons' nominal value is the actual value to the class members. *See HP Inkjet*, 716 F.3d at 1179 (coupons are used to "mask[] the relative payment" of class counsel as compared with the class) (quoting Christopher R. Leslie, *A Market-Based Approach to Coupon Settlements in Antitrust and Consumer Class Action Litigation*, 49 UCLA L. Rev. 991, 1049 (2002)); Geoffrey P. Miller & Lori S. Singer, *Nonpecuniary Class Action Settlements*, 60 L. & CONTEMP. PROBS. 97, 108 (1997). The Ninth Circuit held that CAFA "require[s] the district court to calculate the redemption value of the coupons before awarding any attorneys' fees that [a]re 'attributable to' the coupon relief." *HP Inkjet*, 716 F.3d at 1186. Presaging *HP Inkjet*, this Court correctly differentiated face value from actual value: "[b]ecause redemption rates have a direct and potentially devastating impact on the actual value received by the class, such lack of evidence prevents any reasoned assessment of the settlement's actual value to the class." *Sobel*, 2011 U.S. Dist. LEXIS 68984, at *36; *Synfuel*, 463 F.3d at 653-54 (requiring this assessment). Class counsel's request violates CAFA because it is based on the artificial valuation rather than the number of vouchers actually redeemed.

**C.    The fee award should be deferred until the actual number of redeemed coupons is known.**

The settling parties sought an administrative schedule designed to insulate the fee request from a comparison with the actual number of claims received (and vouchers redeemed). *See* Settlement Exhibit D, Dkt. 113-1 at 63 (requesting a claims deadline of 60 days after final fairness hearing). This appears to be an attempt to hide the ball so that the Court and the public never learns how poorly the class fares.

---

[4] 60% of class members who have made claims to date have selected cash. *See* Fee Motion, Dkt. 125 at 12. Even if class counsel sought fees based solely on the cash to class members, class counsel's fee request would still be improper because it is disproportionate to the amount actually received by the class. *See infra* Section V.A.

OBJECTION BY WILLIAM ANDREWS TO PROPOSED SETTLEMENT AND FEE AGREEMENT

Moreover, the number of claimed vouchers that will actually be used – which is the value CAFA requires for purposes of the attorney fee award – will not be known until after the vouchers are issued and redeemed. Even before 28 U.S.C. § 1712(a) mandated this method of valuing coupon settlements, deferring and staggering fee awards was an accepted practice.[5] Indeed, staggering the fee properly incentivizes class counsel to bestow maximum value upon class members. In short, class counsel's requested fee violates CAFA because it is not based on the number of redeemed vouchers. Objector Andrews formally requests that the Court abstain from awarding fees until the number of redeemed vouchers (and the number of cash claims) are known.

## V.   THE SETTLEMENT CONTAINS MULTIPLE BLUETOOTH SIGNS OF SELF-DEALING.

The concerns about the potential conflict of interest between class counsel and their clients "warrant special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement…" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998); *accord Bluetooth*, 654 F.3d at 947. "If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have obtained." *Staton*, 327 F.3d at 964; *accord Bluetooth*, 654 F.3d at 947; John C. Coffee, Jr., *The Regulation of Entrepreneurial Litigation: Balancing Fairness and Efficiency in the Large Class Action*, 54 U. Chi. L. Rev. 877, 883 (1987) ("The classic agency cost problem in class actions involves the 'sweetheart' settlement, in which the plaintiff's attorney trades a high fee award for a low recovery.").

---

[5] *See In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 292 F. Supp. 2d 184, 189-90 (D. Me. 2003) (deferring "award of attorney fees until experience shows how many vouchers are exercised and thus how valuable the settlement really is."); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 380 (D. Mass. 1997) (staging the fee award based on actual value created for the class); Notes of Advisory Committee on 2003 Amendments to Rule 23(h) ("[I]t may be appropriate to defer some portion of the fee award until actual payouts to class members are known."); Richard A. Nagareda, *Class Actions in the Administrative State: Kalven and Rosenfield Revisited*, 75 U. CHI. L. REV. 603, 644 (2008) ("What rightly matters in this corner of the class settlement is not the value made available to class members but, rather, the value of those actually redeemed.").

It is not enough that the settlement happened to be at "arm's length" without explicit collusion; the settlement must be objectively reasonable as well and avoid self-dealing by the class counsel. Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests … to infect the negotiations." *Bluetooth*, 654 F.3d at 947 (citing *Staton*, 327 F.3d at 960). Rather than explicit collusion, there need only be acquiescence for such self-dealing to occur: "a defendant is interested only in disposing of the total claim asserted against it" and "the allocation between the class payment and the attorneys' fees is of little or no interest to the defense." *Staton*, 327 F.3d at 964 (quoting *In re GM Pick-Up*, 55 F.3d at 819-20); *accord Bluetooth*, 654 F.3d at 949; *Mirfasihi v. Fleet Mortgage Corp.,* 356 F.3d 781, 785 (7th Cir. 2004) (Posner, J.). Thus, class counsel is wrong when they claim that their fee is presumptively reasonable (Dkt. 125 at 10); two parties cannot legitimately agree to shortchange absent parties to the negotiation.

Thus, a settlement can be unfair even when negotiated at arms' length: class counsel can achieve an impermissible self-dealing settlement simply through a defendant's and a mediator's indifference to the allocation. *Staton*, 327 F.3d at 964. The relevant inquiry is whether the attorneys are unfairly attuned to their self-interest at the expense of the class. *Pearson,* 772 F.3d at 787 (nixing "selfish deal"); *Pampers,* 724 F.3d 713, 718 (6th Cir. 2013) (disallowing deal that afforded "preferential treatment" to class counsel); *Bluetooth*, 654 F.3d at 947; *Sobel*, 2011 U.S. Dist. LEXIS 68984 at *44-*46 (rejecting a "lawyer's bargain"); *cf. also ALI Principles* § 3.05, comment b at 208 (2010). *Bluetooth* suggests a nonexclusive list of three possible signs of self-dealing. *Bluetooth*, 654 F.3d at 947. As in *Bluetooth*, there are "multiple indicia" of unfairness present here.

### A.   Class counsel's request—estimated to exceed 50% of class recovery—is a disproportionate award that reflects self-dealing.

The first sign of self-dealing is class counsel's request for a "disproportionate distribution of the settlement." *Bluetooth*, 654 F.3d at 947 (quoting *Hanlon*, 150 F.3d at 1021). As an initial matter, class counsel argue that percentage-of-recovery is not appropriate here because the attorneys' fees are being paid separately from class recovery. Fee Motion, Dkt. 125 at 9. Unlike an all-inclusive pure common fund, the

13

cash/voucher benefits are formally segregated from the attorneys' fees to class counsel. This segregation forms what is known as a "constructive common fund." *See, e.g., Dennis*, 697 F.3d at 862-63 (evaluating a similar "constructive common fund" settlement); *In re GM Pick-Up*, 55 F.3d at 820 (A severable fee structure "is, for practical purposes, a constructive common fund."); *In re GM Pick-Up*, 55 F.3d at 821 ("[P]rivate agreements to structure artificially separate fee and settlement arrangements cannot transform what is in economic reality a common fund situation into a statutory fee shifting case."); *Johnson v. Comerica*, 83 F.3d 241 (8th Cir. 1996) ("[I]n essence the entire settlement amount comes from the same source. The award to the class and the agreement on attorney fees represent a package deal."). Because "the adversarial process" between the settling parties cannot safeguard "the manner in which that [settlement] amount is *allocated* between the class representatives, class counsel, and unnamed class members," it is no surprise that the most common settlement defects are ones of allocation. *Pampers*, 724 F.3d at 717 (emphasis in original). Allocational issues cannot be waived away simply by structuring the settlement as a constructive common fund, rather than a traditional common fund. *See, e.g., Bluetooth*, 654 F.3d at 943; *Pampers*, 724 F.3d at 717.

The benchmark for a reasonable award in the Ninth Circuit in a case alleging economic injury is 25% of the class benefit. *Bluetooth*, 654 F.3d at 942; *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Even if the plaintiffs wish an award based on their lodestar, a court must cross-check the request against the percentage of the recovery. "Just as the lodestar method can 'confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate,' the percentage-of-recovery method can likewise 'be used to assure that counsel's fee does not dwarf class recovery.'" *Bluetooth*, 654 F.3d at 945 (quoting *In re GM Pick-Up*, 55 F.3d at 821 n.40). The cross-check is there to provide a ceiling, not a floor.

Class counsel argue that the fee request is reasonable under the percentage-of-recovery cross-check because the $2.6 million fee request ranges from 3.5% to 12.5% of the estimated $20 million to $70 million recovery. Fee Motion, Dkt. 125 at 16. Class counsel's calculation, however, is based on its estimate of the total amount *available* to class members. Fee Motion, Dkt. 125 at 11. In performing the disproportionality

14

analysis, the court must base it on the amount the class *actually* receives. As Judge Posner recently explained in *Redman v. RadioShack*, "[t]he ratio that is relevant to assessing the reasonableness of the attorneys' fee that the parties agreed to is the ratio of (1) the fee to (2) the fee plus what the class members received." 768 F.3d at 630; *see also HP Inkjet,* 716 F.3d at 1178 ("Where both the class and its attorneys are paid in cash…[t]he district court can assess the relative value of the attorneys' fees and the class relief simply by comparing the amount of cash paid to the attorneys with the amount of cash paid to the class."); *Bluetooth*, 654 F.3d at 943 (reversing and remanding after district court failed to make comparison between attorney award and value of settlement benefit to class); *Baby Prods.*, 708 F.3d at 174 (reversing where district court failed to "withhold final approval until the actual distribution of funds [could] be estimated with reasonable accuracy"); *In re GM Pick-Up*, 55 F.3d at 822 ("At the very least, the district court on remand needs to make some reasonable assessment of the settlement's value and determine the precise percentage represented by the attorneys' fees.").

Because the class members have the option of choosing cash or a voucher, the attorneys' fee request must be measured against (1) the number of redeemed vouchers, *see* 28 U.S.C. § 1712(a), and (2) the actual number of cash claims. While the settling parties structured the settlement so that the exact value received by the class is unknown, even making generous assumptions about the number of redeemed vouchers and cash claims results in a disproportionate fee award.

Class counsel revealed that 130,000 class members have filed claims. *See* Plaintiffs' Motion for Final Approval ("Final Approval Motion"), Dkt. 124 at 23.[6] 60% of class members who have made claims to date have selected cash. *See* Fee Motion, Dkt. 125 at 12. The average amount paid in ACRF fees for Enterprise renters was $17.14 and the average ACRF fees for Vanguard renters is $19.47. *See* Declaration of Nicholas J. Demattee, Dkt. 114-2 at 4. The value of the voucher is estimated to be $40. Final Approval Motion, Dkt. 124 at 18. The amount the class will receive is approximately:

---

[6] This number will not increase significantly as it is likely that most class members submit claims shortly after receiving notice. Indeed, in *Sobel*, class counsel estimated that claims would increase from 3.36% to 4% in the 60 days following the fairness hearing. *Sobel*, 2011 U.S. Dist. LEXIS 68984, *34.

OBJECTION BY WILLIAM ANDREWS TO PROPOSED SETTLEMENT AND FEE AGREEMENT

|  | Claims | Average Value of Claim | TOTAL |
|---|---|---|---|
| Cash Option | 78,000 | $16 (80% of $20 based on average ACF fee for renters of $17 or $19) | $1,248,000 |
| Voucher Option | 52,000 | $40 (one voucher based on average ACRF fee for renter under $20) | $2,080,000 (assuming 100% redemption) |
| | | TOTAL VALUE OF CASH + VOUCHER RELIEF = | $3,328,000 |

Thus, the relevant ratio is (1) $2,625,000 fees to (2) $2,625,000 fees + $3,328,000 recovery = 44%. Moreover, the 44% estimate assumes an "unrealistic" 100% redemption rate of the vouchers and thus class counsel would likely receive much more than 44% under the proposed settlement. *Sobel*, 2011 U.S. Dist. LEXIS 68984, at *39. The valuation of the coupons at the face value, rather than the redemption value, is egregious because coupon redemption rates are famously low, *see* 28 U.S.C. § 1711, note § 2(a)(3)(A), and cases abound in which few class members redeem their coupons or make claims on a claims-made fund.[7] Even assuming an improbable 50% redemption rate, class counsel's fee request would exceed class recovery and result in a 53.4% fee ($2.6/$4.9 million). And if the redemption rates are a more typical "1-3%"[8], class counsel's fee request would amount to two-thirds of the settlement value. Class counsel's request for more than 50% of the total recovery is excessive under Ninth Circuit guidelines. *See Dennis*, 697 F.3d at 868 (holding attorney fee and expense award of $2 million—38.9% of total recovery—"clearly excessive"); *Ko v. Natura Pet Prods.*, No. C 09-02619 SBA, 2012 U.S. Dist. LEXIS 128615 (N.D. Cal.

---

[7] *See, e.g., Sobel*, 2011 U.S. Dist. LEXIS 68984, at *34 (3% claims from 2.5 million notices sent to class members); *Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014) ("[I]n consumer class actions, [] the percentage of class members who file claims is often quite low (in this case it was 30,245 ÷ 12 million = .0025, or one quarter of one percent)....") (citing Daniel Fisher, "Odds of a Payoff in Consumer Class Action? Less Than a Straight Flush," Forbes, May 8, 2014, www.forbes.com/sites/danielfisher/2014/05/08/odds-of-a-payoff-in-consumer-class-action-less-than-a-straight-flush/); *Redman*, 768 F.3d at 628  ("little more than one half of one percent" submitted claims for $10 coupons); *Monteferrante v. Container Store*, 2015 U.S. Dist. LEXIS 13212 (D. Mass. Feb. 4, 2015) (claims rate of 1.8% for a $10 coupon); *Moody v. Sears Roebuck & Co.*, 664 S.E.2d 569, 572, 574 (N.C. App. 2008) (317 valid claims filed out of 1,500,000 member class, for total of $2,402 in total redemption of coupons as compared to more than $1,000,000 in attorneys' fees and costs); *Union Fidelity Life Ins. Co. v. McCurdy*, 781 So.2d 186, 188 (Ala. 2000) (113 redemptions out of 104,000 member class).

[8] James Tharin & Brian Blockovich, *Coupons and the Class Action Fairness Act*, 18 GEO. J. LEGAL ETHICS 1443, 1445 (2005) (citing examples).

Sept. 10, 2012) (reducing 35% fee request to 25%). Class counsel's request is disproportionately high and thus reflects impermissible self-dealing under *Bluetooth*.

**B.     The settlement's "clear sailing" and "kicker" provisions show self-dealing.**

The settlement has a "clear sailing" provision providing that defendants will not oppose the attorneys' fee request of up to $2.5 million and costs of $125,000. Settlement, Dkt. 113-1 at 10. A clear sailing clause stipulates that attorney awards will not be contested by opposing parties. "Such a clause by its very nature deprives the court of the advantages of the adversary process." *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991). The clause "suggests, strongly," that its associated fee request should go "under the microscope of judicial scrutiny." *Id*. at 525. The clear sailing clause lays the groundwork for lawyers to "urge a class settlement at a low figure or on a less-than-optimal basis in exchange for redcarpet treatment on fees." *Id*. at 524; *accord Bluetooth*, 654 F.3d at 947. Here, class counsel put its own fees ahead of the interests of the class by negotiating a provision that insulated those fees from challenge by the defendants. Class counsel provide no justification for this self-serving clause.

As this Court explained in *Sobel*, clear sailing also undermines any conceivable benefit of separate negotiation of fees and terms. *Sobel*, 2011 U.S. Dist. LEXIS 68984, at *45. Not only does the settlement contain a "clear sailing" provision forbidding defendants from challenging the fee amount, but there is a "kicker" agreement providing that any reduction in the fee award reverts to the defendants, rather than the class. The settlement agreement effectuates this by stipulating that fees will be considered separate and apart from class relief. Settlement, Dkt. 113-1 at 11-12. This is the third red flag pinpointed by *Bluetooth*: when the "parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Bluetooth*, 654 F.3d at 947.

This "kicker arrangement reverting unpaid attorneys' fees to the defendant rather than to the class amplifies the danger" that is "already suggested by a clear sailing provision." *Id*. at 949. "The clear sailing provision reveals the defendant's willingness to pay, but the kicker deprives the class of that full potential benefit if class counsel negotiates too much for its fees." *Id*. In a typical common fund settlement, the

OBJECTION BY WILLIAM ANDREWS TO PROPOSED SETTLEMENT AND FEE AGREEMENT

district court may, at its discretion, reduce the fees requested by plaintiffs' counsel—and when it does so, the class will benefit from the surplus. *E.g., Michel v. Wm Healthcare Solutions*, No. 1:10-cv-638, 2014 U.S. Dist. LEXIS 15606, at *52 (S.D. Ohio Feb. 7, 2014) (lowering the fee to 15% "will accomplish…important goals.…[B]y reducing the amount of the fund paid to Class Counsel, the Court augments the benefit to each Class Member.").

Indeed, a court has less incentive to scrutinize a fee award because the kicker combined with the clear sailing agreement means that any reversion benefits only the defendant that had already agreed to pay that initial amount. Charles Silver, *Due Process and the Lodestar Method: You Can't Get There From Here*, 74 TUL. L. REV. 1809, 1839 (2000) (such a fee arrangement is "a strategic effort to insulate a fee award from attack"); Lester Brickman, LAWYER BARONS 522-25 (2011) (same; further arguing that reversionary kicker should be considered per se unethical). Clear-sailing fee agreement with a kicker to defendants is presumptive evidence of unfair self-dealing by class counsel. *Bluetooth*, 654 F.3d at 948-49; *Pearson*, 772 F.3d at 787 (finding no justification for a kicker provision and holding that there should be a strong presumption that a "kicker" clause is invalid). The problem is not merely hypothetical. If this Court decreases the $2.6 million excessive fee award, the excess returns to defendants rather than the class. The settlement should be rejected until and unless the kicker agreement is removed. *See Eubank v. Pella Corp.,* 753 F.3d 718, 723 (7th Cir. 2014) (suggesting that the district court should have deleted the kicker provision to allow any fee excess to return to the class).

Finally, by structuring the settlement to include the kicker agreement, class counsel has also breached its duty to the class members. Class counsel breach their fiduciary obligation when they agree to a fee arrangement to the detriment of the class. *Lobatz v. U.S. West Cellular of Cal., Inc*., 222 F.3d 1142, 1147 (9th Cir. 2000) ("[C]lass counsel agreed to accept excessive fees and costs to the detriment of class plaintiffs, then class counsel breached their fiduciary duty to the class."); *see In re Aqua Dots Prod. Liab. Litig*., 654 F.3d 748 (7th Cir. 2011) (Easterbrook, J.) (holding that attorneys that bring a class action solely for their own benefit at the expense of the class fail to meet the adequacy requirement under Rule 23(a)(4)). Class counsel breached their fiduciary obligation by failing to demand a settlement structure that would

18

return any reversion to the class.

**C.    Setting the claims deadline two months after the fairness hearing is further evidence of self-dealing.**

The settling parties' decision to set the claims deadline two months after the fairness hearing can and should be considered another *Bluetooth* warning sign of an unfair settlement, for it is designed to insulate the fee requests from a comparison with the actual amounts paid to class members. Without information regarding the actual value of the settlement, class counsel could more readily disguise how excessive their fee request is. *Cf. Dennis*, 697 F.3d at 867 (requiring that settlement valuation "be examined with great care to eliminate the possibility that it serves only the self-interests of the attorneys and the parties, and not the class, by assigning a dollar number to the fund that is fictitious"); *HP Inkjet*, 716 F.3d at 1179 (observing similar problems). Here, the claims deadline is sixty days after the final fairness hearing. *See* Preliminary Approval Order, Dkt. 116 at 5. As explained above, because the claims deadline is after the fairness hearing, the court and class members cannot know the total amount of claims paid, nor the number of vouchers issued. *See supra* Section IV.C.

The amount the class actually receives under the settlement, however, is a critical component in performing the *Bluetooth* disproportionality analysis. *Bluetooth*, 654 F.3d at 943 (reversing and remanding after district court failed to make comparison between attorney award and value of settlement benefit to class); *In re GM Pick-Up*, 55 F.3d at 822 ("At the very least, the district court on remand needs to make some reasonable assessment of the settlement's value and determine the precise percentage represented by the attorneys' fees."). The Court should not approve the settlement without a final accounting of how much the class is actually receiving. *See Dennis*, 697 F.3d at 869 (rejecting a similar "Just trust us. Uphold the settlement now, and we'll tell you what it is later" argument); *see also Baby Prods*., 708 F.3d at 174, 175, 179 (holding that final approval must be withheld until amount class receives is determined). The claims process was unnecessarily structured to prevent valuation of the actual class recovery and further reflects self-dealing.

In short, this case has many of the indicia of self-dealing present in *Bluetooth* and more. *Bluetooth*

19

requires rejection of the settlement.

## VI.   A MULTIPLIER GREATER THAN ONE IS INAPPROPRIATE.

While percentage of recovery is the preferred method in calculating attorneys' fees, the lodestar cross-check, can "confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate." *Bluetooth*, 654 F.3d at 945. Here, class counsel submits a lodestar of fees and expenses of $1,178,358.53. *See* Fee Motion, Dkt. 125 at 6. Class counsel argues that the 2.3 multiplier is appropriate because of the "excellent result." *See* Fee Motion at 7. Class counsel's arguments are unavailing and contradictory.

If class counsel could in fact show that statutory fee-shifting was available to them based upon this settlement (as opposed to winning a litigated judgment), this Court has found no authority for lodestar enhancement multipliers in the context of such fee-shifting. *Sobel v. Hertz Corp*., 2014 U.S. Dist. LEXIS 143926, at *16-*18 & n.8 (D. Nev. Oct. 9, 2014). As noted in *Sobel*, the Supreme Court has established a "strong presumption that the lodestar is sufficient" without an enhancement multiplier. *Id.* at *16-17 (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)); *see also Perdue v. Kenny A*., 130 S. Ct. 1662, 1669 (2010). A lodestar enhancement is justified only in "rare and exceptional" circumstances where "specific evidence" demonstrates that an unenhanced "lodestar fee would not have been adequate to attract competent counsel." *Perdue*, 130 S. Ct. at 1673. "[T]he burden of proving that an enhancement is necessary must be borne by the fee applicant." *Id. Perdue's* limitation on enhancements was made in the context of interpreting 42 U.S.C. § 1988's language of "reasonable" fee awards, but has equal application to "reasonable" fee awards in class actions made under Fed. R. Civ. P. 23(h). *See e.g., In re Pet Food Prods. Liab. Litig*., 629 F.3d 333, 361 (3d Cir. 2010) (Weis, J. concurring/dissenting) (referring to *Perdue* as an "analogous statutory fee-shifting case"); *Van Horn v. Nationwide Prop. & Cas. Ins. Co*., 436 Fed. Appx. 496, 500 (6th Cir. 2011); *Weeks v. Kellogg Co*., No. 09-cv-8102, 2011 U.S. Dist. LEXIS 155472, at *129-*135 & n.157 (C.D. Cal. Nov. 23, 2011) (citing *Perdue* and finding "little basis for an application of a multiplier" when calculating lodestar cross-check).

In short, it would be improper to permit any multiplier greater than one.

OBJECTION BY WILLIAM ANDREWS TO PROPOSED SETTLEMENT AND FEE AGREEMENT

1
2

## VII.   THIS COURT SHOULD NOT INFER SETTLEMENT APPROVAL FROM A LOW NUMBER OF OBJECTORS.

3

A low number of objections does not demonstrate that the settlement is fair, reasonable, and

4

adequate. Any given class action settlement, no matter how much it betrays the interests of the class, will

5

produce only a small percentage of objectors. The predominating response will always be apathy, because

6

objectors—unless they can obtain *pro bono* counsel—must expend significant resources on an enterprise

7

that will create little direct benefit for themselves. *See Vought v. Bank of Am.*, 901 F. Supp. 2d 1071, 1093

8

(C.D. Ill. 2012) (citing, *inter alia*, a 1996 Federal Judicial Center survey that found between 42% and 64%

9

of settlements engendered no filings by objectors). Another common response from non-lawyers will be

10

the affirmative avoidance, whenever possible, of anything involving a courtroom. Class counsel may argue

11

that this understandable tendency to ignore notices or free-ride on the work of other objectors is best

12

understood as acquiescence in or evidence of support for the settlement. This is wrong. Silence is simply

13

*not* consent. *Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434, 447 (S.D. Iowa 2001) (*citing In re GM*

14

*Pick-Up,* 55 F.3d at 789.). "Silence may be a function of ignorance about the settlement terms or may

15

reflect an insufficient amount of time to object. But most likely, silence is a rational response to any

16

proposed settlement even if that settlement is inadequate. For individual class members, objecting does not

17

appear to be cost-beneficial. Objecting entails costs, and the stakes for individual class members are often

18

low." Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action*

19

*Settlements*, 59 Fla. L. Rev. 71, 73 (2007).

20

Without *pro bono* counsel to look out for the interests of the class, filing an objection is

21

economically irrational for any individual. "[A] combination of observations about the practical realities

22

of class actions has led a number of courts to be considerably more cautious about inferring support from

23

a small number of objectors to a sophisticated settlement." *In re GM Pick-Up*, 55 F.3d at 812 (*citing In re*

24

*Corrugated Container Antitrust Litig.*, 643 F.2d 195, 217–18 (5th Cir. 1981)); *Sobel*, 2011 U.S. Dist.

25

LEXIS 68984 at \*47 (similar). "[A] low number of objectors is almost guaranteed by an opt-out regime,

26

especially one in which the putative class members receive notice of the action and notice of the settlement

27
28

---

OBJECTION BY WILLIAM ANDREWS TO PROPOSED SETTLEMENT AND FEE AGREEMENT

offer simultaneously." *Ellis v. Edward D. Jones & Co.*, 527 F. Supp. 2d 439, 446 (W.D. Pa. 2007). "[W]here notice of the class action is, again as in this case, sent simultaneously with the notice of the settlement itself, the class members are presented with what looks like a *fait accompli*." *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677, 680–681 (7th Cir. 1987). "Acquiescence to a bad deal is something quite different than affirmative support." *In re Gen. Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1137 (7th Cir. 1979) (reversing approval of settlement).

When class members have little at stake, the rate of response will be predictably low. As such, the response from class members cannot be seen as something akin to an election or a public opinion poll. *See In re GM Pick-Up*, 55 F.3d at 813 (finding that "class reaction factor" does not weigh in favor of approval, even when low number of objectors in large class, when "those who did object did so quite vociferously"); Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 Vand. L. Rev. 1529, 1532 (2004). It is typically not worth the average citizen's time or money to object: the slight likelihood that one additional objection will be decisive, when multiplied by the slight increase in an individual class member's payout that such an objection would produce, makes individually-funded objections a losing proposition.

The Court must act as a guardian for *all* class members—whether or not they have formally entered the case by registering an objection. "[T]he absence or silence of class parties does not relieve the judge of his duty and, in fact, adds to his responsibility." *Amalgamated Meat Cutters & Butcher Workmen v. Safeway Stores, Inc.*, 52 F.R.D. 373, 375 (D. Kan. 1971). The Court should draw no inference in favor of the settlement from the number of objections, especially given the vociferousness of the objectors. *In re GM Pick-Up*, 55 F.3d at 812–13; *ALI Principles* § 3.05, *comment a* at 206.

# VIII.   CONCLUSION

The Court should deny approval. Even if the Court were to approve the settlement, it should defer awarding fees until the actual number of redeemed vouchers is known, and then scale the Rule 23(h) award to reflect proportionality with the cash actually received and vouchers redeemed by the class.


Dated: April 13, 2015                    Respectfully submitted,


                                         */s/ Melissa A. Holyoak*
                                         Melissa A. Holyoak (MO Bar No. 62602, *pro hac vice* granted)
                                         **CENTER FOR CLASS ACTION FAIRNESS LLC**
                                         1718 M Street NW, No. 236
                                         Washington, DC 20036
                                         melissaholyoak@gmail.com
                                         (573) 823-5377

                                         Robert W. DeLong
                                         PARSONS BEHLE & LATIMER
                                         50 West Liberty Street, No. 750
                                         Reno, NV 89501
                                         redelong@parsonsbehle.com
                                         (775) 323-1601

                                         *Attorneys for Objector William Andrews*

OBJECTION BY WILLIAM ANDREWS TO PROPOSED SETTLEMENT AND FEE AGREEMENT

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system thus effectuating service of such filing all ECF registered attorneys in this case. I further certify that I caused the foregoing document to be sent via first class mail to the following at the addresses listed below:

Clerk of the Court
U.S. District Court for the District of Nevada
Reno Division
400 S. Virginia Street
Reno, NV 89501

G. David Robertson
ROBERTSON, JOHNSON, MILLER & WILLIAMSON
50 W. Liberty Street, Suite 600
Reno, NV 89501

Janine L. Scancarelli
CROWELL & MORING LLP
275 Battery Street, 23rd Floor
San Francisco, CA 94111

DATED this 13th day of April, 2013.

*/s/ Melissa A. Holyoak*

Melissa A. Holyoak

OBJECTION BY WILLIAM ANDREWS TO PROPOSED SETTLEMENT AND FEE AGREEMENT