1   BOWEN HALL
    Dan C. Bowen (SBN 1555)
2   555 South Center Street
    Reno, Nevada 89501
3   Telephone: (775) 323-8678
    Facsimile: (775) 786-6631
4
    CROWELL & MORING LLP
5   Gregory D. Call (admitted pro hac vice)
    Janine L. Scancarelli (admitted pro hac vice)
6   J. Daniel Sharp (admitted pro hac vice)
    275 Battery Street, 23rd Floor
7   San Francisco, CA  94111
    Telephone: (415) 986-2800
8   Facsimile: (415) 986-2827

9   Attorneys for Defendants Enterprise Leasing
    Company-West, LLC and Vanguard Car Rental USA, LLC
10

11                  UNITED STATES DISTRICT COURT

12              IN AND FOR THE DISTRICT OF NEVADA

13

14  LYDIA LEE and CAROLYN                Case No. 3:10-CV-00326-LRH-(WGC)
    BISSONETTE, individually and on behalf
15  of all others similarly situated,    **DEFENDANTS ENTERPRISE LEASING
                                         COMPANY-WEST, LLC AND
16                  Plaintiffs,          VANGUARD CAR RENTAL USA, LLC'S
                                         RESPONSE TO OBJECTIONS**
17       v.
                                         Date:      May 12, 2015
18  ENTERPRISE LEASING COMPANY-          Time:      10:00 a.m.
    WEST, LLC, a Delaware LLC, and       Place:     Courtroom No. 3
19  VANGUARD CAR RENTAL USA, LLC,        Judge:     Hon. Larry R. Hicks
    a Delaware LLC,
20
                    Defendants.
21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 2

4

5

    I.      Objector Markich Overlooks the Facts that Many Class Members Can Recover More Than They Paid, and Many Can Recover More Than $5 and More Than One Day's Rental ................................................................................ 3

6

    II.     Objector Elledge Overlooks the Facts that the Settlement Is a Compromise and that Many Class Members Can Recover More Than $5 ................................. 3

7

    III.    Objector Sterling ............................................................................................... 4

8

          A.      Sterling's Difficulty in Using a Voucher Issued in the *Shames* Case Does Not Justify Disapproval of the Settlement ....................................... 4

9

          B.      Courts Routinely Approve Claims-Made Settlements in Class Actions ...................................................................................................... 5

10

    IV.    Objector Andrews Mischaracterizes the Settlement as a "Coupon Settlement" ....................................................................................................... 7

11

12

          A.      The Settlement Here Is Not a "Coupon Settlement" for Purposes of the Class Action Fairness Act: It Is A Cash Settlement, in Which Claimants Can Elect Vouchers if They So Choose .................................. 7

13

          B.      The Fee Agreement in the Settlement Is Not a "Kicker" Arrangement that Can Deprive Class Members of Any Benefits .............. 8

14

          C.      Allowing Class Members to Submit Claims After the Fairness Hearing Will Increase the Number of Claims ........................................... 9

15

16

          D.      The Reaction of Class Members to the Proposed Settlement Supports Approval .................................................................................. 10

17

    V.     Objector Elasali Overlooks the Fact that the Complaint in this Case Alleges Only Violations of a Nevada Statute Before September 30, 2009 ...................... 11

18

CONCLUSION ............................................................................................................... 11

19

20

21

22

23

24

25

26

27

28

-i-

DEFENDANTS' RESPONSE TO OBJECTIONS;
CASE NO. 3:10-CV-00326-LRH-(WGC)

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011)..................................................................................9

*Churchill Vill. v. Gen. Electric*,
   361 F.3d 566 (9th Cir. 2004)..........................................................................3, 4, 10

*Hanlon v. Chrysler Corp.*,
   150 F. 3d 1011 (9th Cir. 1998)................................................................................7

*Monteferrante v. The Container Store, Inc.*,
   2015 U.S. Dist. LEXIS 13212 (D. Mass. Feb. 4. 2015)..........................................10

*Moody v. Sears Roebuck & Co.*,
   664 S.E.2d 569 (N.C. App. 2008) .........................................................................11

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015)..........................................................................6, 7, 10

*Pearson v. NBTY, Inc.*,
   772 F.3d 778 (7th Cir. 2014)..................................................................................10

*Pelletz v. Weyerhaeuser Co.*,
   255 F.R.D. 537 (W.D. Wash. 2009) .........................................................................6

*Redman v. RadioShack Corp.*,
   768 F.3d 622 (7th Cir. 2014)..............................................................................8, 10

*Shames v. The Hertz Corp.*,
   2012 U.S. Dist. LEXIS 158577 (S.D. Cal. Nov. 5, 2012) ..............................4, 6, 10

*Sobel v. The Hertz Corp.*,
   Case No. 3:06-cv-00545 (D. Nev. June 27, 2011) .................................................10

*Synfuel Technologics, Inc. v. DHL Express (USA), Inc.*,
   463 F.3d 646 (7th Cir. 2006)....................................................................................7

*True v. American Honda Motor Co.*,
   749 F. Supp. 2d 1052 (C.D. Cal. 2010)....................................................................8

*Union Fidelity Life Ins. Co. v. McCurdy*,
   781 So.2d 186 (Ala. 2000) .....................................................................................11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Statutes**

28 U.S.C. § 1712 ......................................................................................................7, 8

N.R.S. § 482.31575 .......................................................................................................11

**Other Authority**

S. Rep. No. 109-14 (2005) .........................................................................................7, 8

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-iii-

DEFENDANTS' RESPONSE TO OBJECTIONS;
CASE NO. 3:10-CV-00326-LRH-(WGC)

**INTRODUCTION**

Defendants Enterprise Leasing Company – West, LLC ("Enterprise") and Vanguard Car Rental USA, LLC ("Vanguard") hereby respond to the objections filed with the Court by Class Members, and respectfully request that the objections be overruled and the Settlement be approved.[1]

As the Court is aware, the Settlement provides a choice of cash or vouchers for free rental days (time and mileage) to Class Members who register for benefits. **Every member of the Class has the opportunity to receive cash.** Registration is a quick and simple process, requiring a Class Member to do nothing more than dial a toll-free number or access a web site (www.RentalCarSettlementNevada.com), and then enter an eight-digit registration number. At that point, the Class Member is informed of the dollar amount of cash to which he or she is entitled (representing 80% of the contested airport concession recovery fee he or she paid on base rates at Nevada airports during the class period) and the number of free-rental-day vouchers to which he or he is entitled, and chooses between those two forms of benefit.

As of April 20, 2015, about 140,000 Class Members had registered for benefits; the registration period remains open for more than two additional months. Decl. of Donald J. Andra Regarding Settlement Administration and Resp. to Class Notice [ECF No. 136] ("Andra Decl.") at ¶ 14; Settlement Agreement [ECF No. 113-1]( "Settlement Agreement") at ¶ 2.1(d). Of the Class Members who have responded to the Class Notice, over 99% have registered for settlement benefits, with about 58% electing cash and about 42% electing vouchers. Andra Decl. at ¶ 14. Fewer than 1% of those responding have elected to exclude themselves. *Id.*

So far, with time remaining for Class Members to register for benefits, Class Members have claimed about $1.4 million in cash, and about 80,000 vouchers for free rental days. *Id.* at ¶ 15. Plaintiffs' Counsel have used $40 as the estimated value of each voucher, in view of the

---

[1] Documents in the Court's docket in this case, including filed objections, are identified by the number they have been assigned in the electronic docket (i.e., "ECF No. X"). Unless otherwise noted, capitalized terms in this Response have the meanings set for the in the Settlement Agreement [ECF No. 113-1].

1    fact that the cost of a day's rental will vary depending upon the brand, the size of the car, and the

2    date, place and duration of the rental.  *See* Joint Decl. of G. David Robertson and Arthur Stock

3    [ECF No. 124-1] ("Joint Decl.") at ¶¶ 34-35.  To look at the value of the benefits that Class

4    Members have claimed so far in a slightly different way, consider that if the Class Members who

5    selected vouchers had instead selected cash, they would have claimed about $800,000 in cash.

6    Andra Decl. ¶ 16.  These Class Members presumably view the vouchers as more valuable than

7    cash – and indeed, each voucher can potentially be redeemed for a rental worth $40 or more.

8    Joint Decl. at ¶¶ 34-35.   But even under the most conservative view, with each Class Member's

9    voucher option valued exactly the same as that Class Member's cash option, Class Members have

10   claimed $2.2 million in value so far ($1.4 million in cash, and $800,000 of cash exchanged for

11   vouchers).

12        Seven Class Members have filed papers with the Court.  One of them asks to be excluded

13   from the Settlement (John H. English, *see* ECF No. 119), and six of them state objections.  One of

14   those six, Bruce J. Downey II [ECF No. 117] objects only to the fees requested by Plaintiffs'

15   Counsel, who can address Mr. Downey's objection in their response.

16        None of the objections justifies disapproving the Settlement.

17                                    **ARGUMENT**

18        None of the objectors disputes two crucial facts that the Court must consider in evaluating

19   this Settlement:

20        **First**, the Settlement allows every Class Members to recover a cash benefit representing a

21   substantial percentage (at least 80%) of the actual amount contested with respect to his or her

22   rentals; because the minimum payment is $5, a substantial number of Class Members can recover

23   more than they paid in contested ACRF.

24        **Second**, if this Settlement is not approved, Class Members face the certainty that this

25   litigation will continue, and the risk that they will not prevail on appeal.  At the Ninth Circuit, an

26   appellate panel will consider *de novo* a range of issues pertaining to liability and the availability

27   of restitution, including issues that have not been raised in the *Sobel v. The Hertz Corp.* case,

28   which is currently before Ninth Circuit.  Even if Class Members do prevail on appeal, any

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-2-

1    recovery would be far in the future.

2    These considerations support approval of the Settlement.  *Churchill Vill. v. Gen. Electric*,

3    361 F.3d 566, 575 (9th Cir. 2004).

4    Defendants here respond to the five objections that raise issues beyond the amount of

5    attorneys' fees requested by Plaintiffs' Counsel.

6    **I.    Objector Markich Overlooks the Facts that Many Class Members Can Recover
7         More Than They Paid, and Many Can Recover More Than $5 and More Than One
          Day's Rental**

8    Objector George Markich [ECF No. 118] objects that the case has not been dismissed.  He

9    also objects to Plaintiffs' Counsel's request for attorneys' fees and service awards, particularly in

10   view of the relief available to Class Members in the Settlement.  Plaintiffs' Counsel can address

11   their request for attorneys' fees and service awards in their response.  Defendants respond here to

12   Mr. Markich's incorrect statement that all Class Members other than the two named plaintiffs

13   "will receive a day's car rental or $5" under the terms of the Settlement.

14   As reflected in paragraph 13 in the Declaration of Nicholas J. DeMattee, filed on

15   November 18, 2014 [ECF No. 114-2] ("DeMattee Decl."), about 180,000 Class Members paid $5

16   or less in airport concession recovery fees ("ACRF") on base rental rates, which cover time and

17   mileage.  Those Class Members can choose between a day's car rental or $5 cash (which

18   represents at least the full amount they paid in contested ACRF).  Other Class Members can

19   choose 80% of the amount they paid in ACRF on base rates, with a minimum payment of $5, or

20   one or more free days' rental, up to five days, depending upon the amount they paid in ACRF.

21   Settlement Agreement at ¶ 2.1(a) and (b).  So, for example, about 335,000 Class Members paid

22   $20 or more in ACRF on base rates – each of these Class Members can choose between cash and

23   two or more days' rental.  DeMattee Decl. at ¶ 13.  Of those, about 25,000 Class Members can

24   choose between cash and five days' rental.  *See id.*

25   **II.   Objector Elledge Overlooks the Facts that the Settlement Is a Compromise and that
          Many Class Members Can Recover More Than $5**
26
27   Objector Thomas S. Elledge, Jr. [ECF No. 120] objects to the amount of recovery to Class

28   Members as well as to the amount of attorneys' fees requested by Plaintiffs' Counsel.

1  Mr. Elledge opines that the Settlement should involve payment of the full ACRF paid, ignoring

2  the fact that the $5 minimum is more than many Class Members paid in ACRF.  *See* DeMattee

3  Decl. at ¶ 13.  Also, in stating that Class Members receive $5, Mr. Elledge overlooks the fact that

4  many Class Members can recover more than the $5 minimum payment that the Settlement

5  provides, as discussed in Section I., above.

6          More generally, however, the Settlement represents a compromise of claims and, as such,

7  does not purport to refund the full amounts paid by Class Members in ACRF.  Considering all the

8  appropriate factors, including the possibility that Class Members will recover nothing at all (if

9  this Court's rulings are reversed on appeal) and the certainty that even if Class Members do

10 recover as a result of a judgment in their favor, their recovery will be far in the future, the value

11 that this Settlement provides to Class Members is fair, reasonable and adequate.  *See Churchill*

12 *Vill.*, 361 F.3d at 576-77.

13 **III.    Objector Sterling**

14         Objector Raymond Sterling [ECF Nos. 126 and 131] objects to the Settlement on two

15 grounds, neither of which is cause for disapproval of the settlement.

16         **A.      Sterling's Difficulty in Using a Voucher Issued in the *Shames* Case Does Not
              Justify Disapproval of the Settlement**

17

18         First, Sterling objects that the vouchers distributed in a previous class action settlement

19 "simply do not work and are worthless," and suggests that the vouchers available in this

20 Settlement are likewise worthless.  ECF No. 126.  In support of his argument, he describes the

21 difficulties he had in using a voucher that was issued to him in connection with the settlement of

22 *Shames, et al. v. The Hertz Corporation, et al.* (Case No. 3:07-02174-MMA(WMC), Southern

23 District of California):  he was not able to use his voucher in connection with an

24 Entertainment.com discount code, and he received an erroneous message that his voucher could

25 not be used on a rental that would begin in April 2015, before the expiration date of the voucher.

26 *See* ECF No. 131.

27         National regrets these difficulties.  When they were first called to its attention, National

28 corrected the programming error that led to the erroneous message regarding expiration.  Decl. of

1   Mae Pratzel Regarding Vouchers Issued by National Car Rental ("Pratzel Decl."), filed herewith,

2   ¶¶ 7-12.  National has also offered to honor the voucher beyond its stated expiration date.  Decl.

3   of Janine L. Scancarelli in Support of Defs' Resp. to Objections, filed herewith, ¶ 5.  As

4   explained to Mr. Sterling, the reason he could not use his *Shames* voucher in connection with an

5   Entertainment.com discount, is that that although the *Shames* voucher was not restricted in its use,

6   the Entertainment.com discount was restricted, and therefore the two could not be used together.

7   Pratzel Decl. at ¶ 10; Apr. 2, 2015 Scancarelli Email to Mr. Sterling, included in ECF No. 131.

8           With regard to the erroneous expiration date, Mr. Sterling suggests, incorrectly, that

9   "thousands of customers" tried to use *Shames* vouchers and were unable to do so, and that no

10  *Shames* vouchers could be redeemed until after November 6, 2014.  ECF No. 131.  In fact,

11  however, Mr. Sterling's was the only complaint regarding the expiration date of the National,

12  Alamo or Enterprise *Shames* vouchers of which Enterprise Holdings, Inc. is aware.  Pratzel Decl.

13  at ¶¶ 5-6, 14-15.  Mr. Sterling appears to believe that until November 6, 2014, all customers

14  received the erroneous message that the vouchers had expired, ECF No. 131, when in fact the

15  only customers who would have received that message are customers who, before November 6,

16  2014, attempted to use *Shames* vouchers for rentals that would begin on March 1, 2015 or later.

17  *Id.* at ¶ 13.  And that number is likely very small, because the vast majority of National, Alamo

18  and Enterprise renters reserve their cars less than 30 days in advance.  *Id.* at ¶ 14

19          Thus, the *Shames* vouchers were not – and are not – "worthless."  And the vouchers to be

20  issued in this case will not be worthless.  *See* Joint Decl. at ¶ 32-35.  The Settlement does not

21  force Class Members to take Settlement benefits as vouchers – Class Members may elect

22  vouchers, but are not required to do so.  And it is no more difficult for Class Members to request

23  cash than to request vouchers – there are no special forms or procedural requirements for Class

24  Members who elect to receive their Settlement benefits as cash.

25          **B.      Courts Routinely Approve Claims-Made Settlements in Class Actions**

26          Second, Sterling objects to the fact that Class Members must register for Settlement

27  benefits.  ECF No. 126.  But there is nothing inherently objectionable about a claims-submission

28  process, and courts routinely approve claims-made settlements, including settlements with claims

1   processes that require class members to provide proof of their claim, something that is not

2   required here.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 940-41 (9th Cir.

3   2015) (affirming approval of class action settlement where relief was provided only to class

4   members who registered and where class members could choose between cash and gift cards as

5   relief, with gift cards available via website, e-mail or mail, but cash available only by mailing a

6   claim that included the last four digits of class member's social security number; in that case

7   notice was provided to 35 million class members; about 1.2 million claims were submitted, of

8   which about 740,000 were for gift cards and about 430,000 were for cash); *see also Shames v.*

9   *The Hertz Corp.*, No. 07-CV-2174-MMA(WMC) 2012 U.S. Dist. LEXIS 158577, at *31 (S.D.

10  Cal. Nov. 5, 2012); *Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537, 544 (W.D. Wash. 2009)

11  (approving claims-made settlement where class members were required to "answer two

12  reasonable claim forms and submit a total of 10 photographs" of mold spotting).

13          The claims process in the Settlement here allows Class Members the opportunity to

14  choose between a cash option and a voucher option.  In the absence of a registration process,

15  Defendants cannot know which option a Class Member would elect, and in fact Class Members

16  have elected both options in substantial, though not exactly equal, numbers:  almost 58% of the

17  claims have been for cash; almost 42% have been for vouchers.  Andra Decl. ¶ 14.  Defendants'

18  obligation to pay cash claims and to issue and redeem vouchers is uncapped – Defendants have

19  accepted the risk of providing relief to as many Class Members as request it.  And any Class

20  Member can request a check for 80% of the amount he or she paid in contested ACRF during the

21  class period, with no dollar limit on the amount of a check that any individual can receive.  *See*

22  Settlement Agreement at ¶ 2.1.

23          Moreover, the registration process, which can be completed in minutes via the Internet or

24  via a toll-free number, is quick, convenient, and costless to Class Members.  Class Members do

25  not have to provide any documentation or certification to receive their benefits, and there are no

26  special procedures for Class Members to follow if they want to receive cash benefits, as opposed

27  to vouchers.

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

DEFENDANTS' RESPONSE TO OBJECTIONS;
CASE NO. 3:10-CV-00326-LRH-(WGC)

**IV.    Objector Andrews Mischaracterizes the Settlement as a "Coupon Settlement"**

Objector William Andrews [ECF No. 133] objects to the Settlement on the grounds that the Class Action Fairness Act ("CAFA") requires heightened judicial scrutiny of the fairness of the settlement, and on the grounds that the requested attorneys' fees do not comply with CAFA and are excessive.  Plaintiffs' Counsel can address their request for attorneys' fees in their response; here, Defendants address the fairness of the Settlement as a whole.

**A.    The Settlement Here Is Not a "Coupon Settlement" for Purposes of the Class Action Fairness Act: It Is A Cash Settlement, in Which Claimants Can Elect Vouchers if They So Choose**

Andrews cites *Synfuel Technologics, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006) for the proposition that in this case, "CAFA requires heightened judicial scrutiny of fairness."  ECF No. 133 at 1:8.  In fact, CAFA simply requires that in a settlement "under which class members would be awarded coupons, the court may approve the proposed settlement only after a hearing to determine whether, and making a written finding that, the settlement is fair, reasonable, and adequate for class members."  28 U.S.C. § 1712(e).  Even if the Court were to find that the Settlement here is one "under which class members would be awarded coupons" (even though Class Members here are given the choice between receiving cash relief and vouchers for a free day's rental), the standard for the approval of the Settlement is the same as in other class action settlements:  the settlement as a whole must be fair, reasonable, and adequate. *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1025 (9th Cir. 1998).

But in fact, this is not a "coupon settlement," even if the vouchers offered here were to be regarded as "coupons."  This is a cash settlement:  every Class Member is entitled to claim cash, with a minimum payment of $5; if a Class Member prefers, he or she can claim vouchers instead.  Settlement Agreement at ¶ 2.1.

It has often been observed that Congress did not define the term "coupon" in CAFA.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 950.  The Senate Judiciary Committee's Report on CAFA explains that "coupon settlements" are those "in which class members receive nothing more than promotional coupons to purchase more products from the defendants."  S. Rep. No. 109-14, at 15 (2005).  That is not the case here, where Class Members make their own choice

1    between receiving a substantial cash refund (80% of the contested amount) and vouchers.  The

2    Senate Report gives numerous examples of disfavored "coupon settlements":  although some of

3    those settlements provided Class Members with options (one offered a crib repair kit or a coupon

4    for a future purchase; another offered discounts or free water), none of them gave Class Members

5    the option to receive a substantial cash refund.[2]  Similarly, in *Redman v. RadioShack Corp.*, 768

6    F.3d 622, 628 (7th Cir. 2014), the "coupon settlement" did not provide any option for cash

7    payments to class members:  class members who registered for benefits would receive a coupon

8    worth $10 at a RadioShack store.  The Senate's primary objection to "coupon settlements" was

9    that in "coupon settlements" the only recipients of cash are Plaintiffs' Counsel.  S. Rep. No. 109-

10   14, at 15-20 (2005).  That is not the case here, where every Class Member can register for cash

11   relief, and tens of thousands have already done so, with tens of thousands more affirmatively

12   selecting vouchers instead of the cash they could have claimed had they preferred it.[3]

13        **B.    The Fee Agreement in the Settlement Is Not a "Kicker" Arrangement that
                  Can Deprive Class Members of Any Benefits.**

14

15        Andrews suggests that if the Court should award Plaintiffs' Counsel less than the amount

16   they request, the "excess returns to defendants rather than the class."  ECF No. 133 at 18:15.  The

17   argument presumes, incorrectly, that there is a set fund of which some money is allocated to Class

18   Members and some is allocated to Plaintiffs' Counsel.

19        Andrews points to the *Bluetooth* case, in which the defendants agreed, among other

20   things, to post safety information on their websites and in their product manuals and packaging,

21   and to pay a total amount of up to about $2.2 million, some of which was allocated to notice (up

22

23        [2] In *True v. American Honda Motor Co.*, 749 F. Supp. 2d 1052 (C.D. Cal. 2010), the
     "coupon settlement" would have involved all class members receiving a DVD that showed how
24   to maximize fuel economy for the vehicles at issue in the case.  In addition, class members could
     register to receive a discount of $1000 or $500 on a future purchase of an eligible car.  *Id.* at
25   1060.  Unlike the Settlement here, *True* offered no cash to class members; the settlement was
     disapproved.  *Id.* at 1083.

26        [3] Andrews also suggests that the Settlement here must be regarded as a "coupon
     settlement" if 28 U.S.C. § 1712(c) is to be properly understood.  But 28 U.S.C. § 1712(c) has no
27   application here, because, even if the Settlement provided for an award of "coupons" (and it does
     not), it does not provide for any equitable relief, which is a prerequisite for application of 28
28   U.S.C. § 1712(c).  *Cf.*  ECF No. 133 at 8:24-26.

1    to $1.2 million), some to *cy pres* awards ($100,000), some to class counsel as fees and costs (up

2    to $850,000), and some to class representatives as incentive awards (up to $12,000). *In re*

3    *Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 939-40 (9th Cir. 2011). The "settlement

4    package" in that case was, accordingly, $2.2 million, and the court viewed that any "savings" on

5    the attorneys' fees represented money that could otherwise have benefited the class. *Id.* at 949.

6         The Settlement here is different. There is no set fund in this Settlement, because

7    Defendants have committed to paying all of the claims made, regardless of the total amount. *See*

8    Settlement Agreement at ¶ 2.1. The fee arrangement was negotiated <u>after</u> the parties had agreed

9    that Class Members would be entitled to relief on a claims-made basis, with each Class Member

10   to elect cash (80% of the amount paid in ACRF on base rates, with a minimum payment of $5) or

11   vouchers (up to five per Class Member, depending upon the amount paid in ACRF). Decl. of G.

12   David Robertson, Esq. [ECF No. 125-3] ¶¶ 15-18. Any "savings" on fees to Plaintiffs' Counsel

13   could not "return" to Class Members, because they never had any claim on it – that money was

14   never part of the fund from which they can receive relief.

15        Because the attorneys' fees in the Settlement are separate from the relief to Class

16   Members, and will have no impact at all on the amount that the Class Members recover, the fee

17   agreement here does not implicate the concerns that were at issue in the *Bluetooth* settlement. *Cf.*

18   *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 949.

19        **C.    Allowing Class Members to Submit Claims After the Fairness Hearing Will
             Increase the Number of Claims.**

20

21        Contrary to Andrews' insinuation, there is nothing sinister about allowing claims to be

22   submitted after the Fairness Hearing. Andrews Objection [ECF No. 133] at 19:3-25. The claims

23   period was not structured "to insulate the fee request from a comparison with the actual number

24   of claims received" or "to prevent valuation of the actual class recovery." *Id.* at 11:20-21, 19:24.

25   It was structured in order to allow Class Members more time to submit claims, while setting the

26   Fairness Hearing at an early date, compatible with the provision of notice, so as to provide

27   certainty to the parties.

28        Andrews' objection to the extended claims period is puzzling in view of his position as to

1    the award of attorneys' fees.  Andrews maintains that the value of class recovery cannot be

2    determined until the end of the voucher redemption period.  *See id.* at 12:7-9.  If that were the

3    case, the mere fact that claims can be made for several weeks after the Fairness Hearing would

4    have no effect on the time for determining the value of class recovery.

5           **D.     The Reaction of Class Members to the Proposed Settlement Supports
              Approval.**

6           Andrews does not deny that in evaluating the Settlement the Court should consider the

7    reaction of Class Members.  *See Churchill Vill.*, 361 F.3d at 577.  But Andrews ignores the fact

8    that Class Members' response to Class Notice has been overwhelmingly positive, as evidenced by

9    comparing the response in this case (in which about 11% of Class Members have already made

10   claims, with more than two months remaining in the claims period) to the response in the cases

11   that Andrews cites.

12          Indeed, the response rate to the Settlement here is far greater than the response rate in the

13   Online DVD Rental case, which Andrews cites extensively, and in which a claims-made

14   settlement was approved where fewer than 4% of class members made claims.  *In re Online*

15   *DVD-Rental Antitrust Litig.*, 779 F.3d at 941.  Many class action settlements have been approved

16   with claims rates far lower than the claims rate here.  *See Shames v. The Hertz Corp.*, 2012 U.S.

17   Dist. LEXIS 158577, at *47-49 (discussing class action cases in which settlements were approved

18   with response rates of 5% or less).

19          In his brief (Andrews Objection [ECF No. 133] at 16 n.7), Andrews cites the following

20   cases as examples of cases with low response rates, but these cases cannot appropriately be

21   compared with the Settlement here, which has a response rate much greater than any of them:

22          •   *Sobel v. The Hertz Corp.*, Case No. 3:06-cv-00545 LRH-RAM (D. Nev. June 27,

23              2011) (84,000 claims from class of almost 2.5 million) – 3.36%.

24          •   *Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014) ("one-fourth of one

25              percent") – 0.25%.

26          •   *Redman*, 768 F.3d at 628 ("a little more than one half of one percent") – 0.5%.

27          •   *Monteferrante v. The Container Store, Inc.*, Case No. 13-11362-RGS, 2015 U.S.

28

Dist. LEXIS 13212, at *2 (D. Mass. Feb. 4. 2015) (1,627 claims from class of 87,000) – about 2%.

- *Moody v. Sears Roebuck & Co.*, 664 S.E.2d 569, 572 (N.C. App. 2008) (317 valid claims from class of between 750,000 – 1.5 million members) – less than 0.1%.

- *Union Fidelity Life Ins. Co. v. McCurdy*, 781 So.2d 186, 188 (Ala. 2000) (113 claims from class of 104,000 – 0.1%.

The fact that there may be cases in which few class members make claims on a claims-made fund is not an appropriate objection to this Settlement, where many Class Members have in fact responded.

**V.    Objector Elasali Overlooks the Fact that the Complaint in this Case Alleges Only Violations of a Nevada Statute Before September 30, 2009.**

Objector Noureddine Elasali [ECF No. 135] objects to the Settlement on the basis of the erroneous belief that Defendants continue to charge illegal concession fees in other states.  This case, however, concerns only the manner of stating ACRF in Nevada.  As this Court is aware, the manner of stating ACRF at issue in this case has long been permitted in other states.  In addition, since October 1, 2009, it has been unambiguously permitted by Nevada law.  N.R.S. § 482.31575.

### CONCLUSION

For the reasons discussed above and in the Parties' other submissions to the Court regarding the proposed Settlement, Defendants Enterprise and Vanguard respectfully request the Court to overrule all objections and grant final approval of the Settlement.

Dated: April 27, 2015                          CROWELL & MORING LLP


                                               /s/ *Janine L. Scancarelli*
                                               Janine L. Scancarelli
                                               Attorneys for Defendants
                                               Enterprise Leasing Company-West, LLC and
                                               Vanguard Car Rental USA, LLC

SFACTIVE-129055.0002097/903658734.7

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-11-

1

## **CERTIFICATE OF SERVICE**

2

3        Pursuant to FRCP 5(b) and Local Rule 5-4, I hereby certify that I am an employee of

4    CROWELL & MORING LLP, over the age of eighteen, and not a party to the within action.  I

5    further certify that on the 27th day of April, 2015, I electronically filed the foregoing document

6    and, thus, pursuant to LR 5-4, caused same to be served by electronic mail on the following Filing

7    Users:

8

9        Arthur Stock                          astock@bm.net

10       G. David Robertson                    gdavid@nvlawyers.com

         Richard D. Williamson                 rich@nvlawyers.com

11       Jonathan J. Tew                       jon@nvlawyers.com

12       Robert W. DeLong                      rdelong@parsonsbehle.com

13       Shoshana T. Savett                    stsavett@bm.net

14

15       I also hereby certify that on the 27th day of April, 2015, I caused to be deposited in the

16    U.S. Mail, first-class postage fully prepaid, a true and correct copy of the foregoing document

17    addressed to the following:

26       Melissa A. Holyoak
         Center for Class Action Fairness
19       1718 M Street, NW, No. 236
         Washington, DC 20036

20

21

22

23                                            */s/ Janine L. Scancarelli*
                                              Janine L. Scancarelli

24

25

26

27

28