G. David Robertson, Esq., (SBN 1001)
Jonathan J. Tew, Esq. (SBN 11874)
ROBERTSON, JOHNSON, MILLER & WILLIAMSON
50 West Liberty Street, Suite 600
Reno, Nevada 89501
Telephone: (775) 329-5600
Facsimile: (775) 348-8300
gdavid@nvlawyers.com
jon@nvlawyers.com
Attorneys for Plaintiffs

BERGER & MONTAGUE, P.C.
Susan Schneider Thomas, Esq.
Arthur Stock, Esq.
Shoshana Savett, Esq.
1622 Locust Street
Philadelphia, PA  19103
(215) 875-3000
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| LYDIA LEE and CAROLYN BISSONETTE, individually and on behalf of all others similarly situated,<br><br>         Plaintiffs,<br><br>vs.<br><br>ENTERPRISE LEASING COMPANY-WEST, a Delaware LLC; and  VANGUARD CAR RENTAL USA, LLC, a Delaware LLC,<br><br>         Defendants. | Case No. 3:10-cv-00326-LRH-WGC<br><br>**PLAINTIFFS' REPLY TO OBJECTIONS TO MOTION FOR APPROVAL OF SETTLEMENT AND MOTION FOR AWARD OF ATTORNEYS' FEES AND INCENTIVE PAYMENTS FOR CLASS REPRESENTATIVES** |

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street
Suite 600
Reno, Nevada 89501

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Over 1.2 million notices of this settlement ("Settlement") were mailed to Class Members. Six objections were received.   Of those, just one provided any actual argument with alleged authority in opposition to either approval of the settlement or the proposed award of attorneys' fees.  This brief therefore primarily focuses on the objection of William Andrews.

Still, despite its seemingly substantive nature, both the document title and the very first sentence of the "Objection by William Andrews to Proposed Settlement and Fee Agreement" (the "Objection") demonstrate fatal misapprehensions of what is at issue here.   The title presupposes that Andrews is objecting to a "Fee Agreement," yet that is not what has been presented to the Court.  Instead, Plaintiffs have submitted a motion for the Court to award fees. The opening sentence of the Objection then states: "[t]his is a *coupon settlement*: class members that file a claim can choose from cash or a voucher for a car rental." Objection at 1:2-3 (emphasis added).   This characterization is also simply wrong.   The Settlement Plaintiffs reached with the Defendants is undoubtedly a **cash settlement** **in that each and every Class Member (collectively, the "Class") has an absolute right to receive cash**.   Each Class Member can receive 80% of the amount of wrongful fees that were collected, with a minimum $5.00 payment, without limitation based on the number of claims that are filed and without any requirement that the Class Member provide any proof of purchase.

In terms of the Settlement, it is true that each Class member can choose to forego the cash payment that is available and instead elect to receive one or more vouchers instead of cash. William Andrews (hereafter "Andrews" or "Objector Andrews") cites no authority, and Plaintiffs' Counsel is aware of none, holding that such an option somehow undermines the cash nature of the Settlement.  Logically, Class Members will only choose one or more voucher(s) if they believe that option has greater value to them than the cash.  Thus, in the minds of such Class Members, the voucher(s) are worth *more than the cash being offered*.  The vouchers thus add value to the Settlement by providing Class Members with an alternative to cash for those Class Members who believe the vouchers to be more valuable than the cash.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street
Suite 600
Reno, Nevada 89501

This is a far cry from a "coupon settlement," since cash is available to each and every Class member.  No one is being forced to take a voucher rather than cash.  Accordingly, none of the concerns of the coupon settlement provisions of the Class Action Fairness Act ("CAFA") are applicable to the instant case.

Turning to fees and costs, Class counsel's Motion and Memorandum in Support of Attorneys' Fees and Costs ("Fees Motion"), requests $2,625,000 for fees and costs, and presents compelling reasons why such amount is appropriate under the factors that courts are instructed to apply.  Plaintiffs did not enter into a "Fee Agreement" with Defendants.  Rather, as explained in detail in Plaintiffs' submission, Plaintiffs negotiated the substantive settlement on behalf of the Class, and agreed that those settlement terms would be presented for Court approval regardless of whether Plaintiffs and Defendants came to any agreement whatsoever in terms of an appropriate amount of fees to be requested or awarded.  Thereafter, Plaintiffs' Counsel negotiated with Defendants that Counsel would not seek more than $2.625 million in fees and costs and Defendants would not object to the request for that amount.  This "clear sailing provision," as it is known, reflects a determination by Defendants that setting a cap on what Plaintiffs' Counsel could request was worth agreeing not to challenge a request at that amount.  The Settlement is not contingent on that amount being awarded, and the Defendants' non-opposition to that amount is but one factor that this Court can evaluate.  In light of the amount of time that counsel have invested in this case since 2006, and the substantial cash fund Class counsel created for the Class (approximately $20,000,000), Class Counsel's request is clearly reasonable. In fact, Class Counsel only seeks a lodestar multiplier of approximately two in compensation for the substantial time and risk they undertook to litigate the Class' claims and ultimately procure a very favorable Settlement for the Class. Such a multiplier is fair and appropriate in this case.  Objector Andrews provides no persuasive argument to the contrary, nor any proof of some phantom collusion at play between Plaintiffs' Counsel and Defendants.

Accordingly, for the reasons set forth both herein and in the Fees Motion, Class Counsel respectfully requests that this Court approve the Settlement and also award them $2,625,000 in fees and costs to be paid by the Defendants completely separate from payments to the Class.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street
Suite 600
Reno, Nevada 89501

PLAINTIFFS' REPLY TO OBJECTIONS
PAGE 2

## II.   LEGAL ARGUMENT

### A.  Andrews Does not Present Any Meaningful Argument that the Settlement Terms Are Unfavorable for the Class

Buried in Andrews' primary arguments regarding attorneys' fees are also oblique objections to the Settlement as a whole.  *See generally,* Objection at 2:10-12; 19:26-20:2; 23:2-4.)  However, Andrews does not present any meaningful argument that the Settlement terms are unfavorable to the Class, and, therefore, his half-hearted objections should be rejected.

For example, Andrews at one point argues: "[t]he settling parties sought an administrative schedule designed to insulate the fee request from a comparison with the actual number of claims received (and vouchers redeemed) . . . . This appears to be an attempt to hide the ball so that the Court and public never learns how poorly the class fares."  Objection at 11:20-24.  There is no "ball hiding" going on here.  The parties have provided the Court with an interim report showing the amount of cash and number of vouchers claimed to date.  Over 135,000 Class Members have submitted claims to date, well before the deadline.  *See* Declaration of Donald J. Andra Regarding Settlement Administration and Response to Class Action Notice, Dkt. No. 136.  Those who choose cash will receive recompense of *at least* eighty percent (80%) of the concession recovery fees they paid.  Also, those who choose vouchers will receive free rentals which they apparently believe have even greater value than the cash.

This argument about administrative scheduling appears to be the primary point Andrews makes to claim that the Settlement is substantively unfavorable to the Class.  Andrews only other real criticism of the Settlement (aside from attorneys' fees) is his implication that the parties colluded to cheat the Class (but he presents no evidence of collusion), and that the vouchers may have low redemption rates (which is unlikely since the Class Members voluntarily choose whether to receive vouchers over cash).  Perhaps recognizing the tepidness of these arguments, Andrews appears to be generally fine with the Court approving the Settlement so long as the attorneys' fees are reduced. *See* Objection at 23:2-4.

In summary, Andrews failed to raise any meaningful objections to the relief that the Class will receive.  The reason why is obvious – because the Settlement is an excellent result for the

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street
Suite 600

1    Class.  It avoids years of additional delay and the risk of appellate reversal, while at the same

2    time providing Class Members with a cash recovery of *at least* 80% of the ACRF's they paid  or

3    the option to receive even greater value in vouchers if they so desire.  The fact that only 6 Class

4    Members - out of over 1.2 million – objected to the Settlement speaks volumes about whether

5    the Class is justifiably satisfied with relief they will receive under the Settlement.

6                    **B.  Andrews' Attorneys' Fees Objections are Meritless**

7                        1.  Nevada Law Applies to Assess Whether the Fee is Reasonable

8            Andrews's Objection purports to challenge the amount of attorneys' fees which should be

9    awarded to Class Counsel, although the attacks do not actually demonstrate that the requested

10   amount is unreasonable.  He begins by arguing at length that federal law applies to determine

11   whether the requested attorneys' fees and costs are reasonable. *See* Objection at pp.4-8. Andrews

12   notes that while state law would normally govern the determination of attorneys' fees, "CAFA

13   'governs the calculation of attorneys' fees for *coupon settlements* in class actions.'" Objection at

14   4:24-5:6 (citations omitted) (emphasis supplied).   The current settlement, however, is a *cash*

15   *settlement* with the additional option of selecting one or more voucher(s). Accordingly, CAFA's

16   coupon settlement provisions do not apply and federal law does not control.

17           Andrews next makes the curious point that: "Federal Rule of Civil Procedure 23(h)

18   permits only the award of "reasonable" fees, not unreasonable ones."  Objection at 5:20-6:12.

19   From this odd premise, Andrews argues that the Nevada provision does not apply under a

20   supremacy clause argument because the state provision directly conflicts with federal law.  This

21   is a strange argument since Nevada law, like Federal law, also requires fees to be reasonable.

22   *See* Nev.R.Stat. §482.31585 ("[T]he prevailing party is entitled to recover reasonable attorneys'

23   fees and costs"); Fees Motion at 6:5-26.   Indeed, the Fees Motion noted the remarkable

24   similarities between Nevada law and Ninth Circuit law concerning the judicial assessment of

25   whether an attorneys' fees request is reasonable.   Among those factors is the *result* of the

26   litigation and what *benefits* were derived. *See* Fees Motion at 6:14-17; 6:20-22. Accordingly,

27   there is no "other state law permitting a disproportionate fee award" in this case that would effect

28   "a 'direct collision' with federal procedure – Rule 23(e)."  *See* Objection at 7:22-24.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street
Suite 600
Reno, Nevada 89501

PLAINTIFFS' REPLY TO OBJECTIONS
PAGE 4

Finally, Andrews contends that "even if this were not a CAFA settlement, federal law would still apply because class counsel's requested fee award is being made by agreement of the parties under Fed. R. Civ. P. 23(h)." (Opposition at 5:7-9.) Again, the fee request is not by agreement of the parties, in that the Settlement under Rule 23 was reached independent of any fee negotiation. Moreover, Fed. R. Civ. P. 23(h) does not create an independent ground for attorneys' fees, and the Ninth Circuit has held that, when state substantive law applies, attorneys' fees are to be awarded in accordance with state law. *See* Fees' Motion at 4:8-20. Andrews further fails to address *Grays Harbor Adventist Christian Sch. V. Carrier Corp,* Case No. 05-05437, 2008 U.S. Dist. LEXIS 106515, at *3 (W.D. Wash. April 24, 2008), which states that "numerous courts within the Ninth Circuit have held that when state substantive law applies, attorneys' fees are to be awarded in accordance with state law." *See* Fees Motion at 4:17-20.

Accordingly, the Class believes that state law applies to assess the reasonableness of the fee award in this case. Nonetheless, whether federal law or state law applies in this case, the outcome will undoubtedly be the same. Ninth Circuit courts and Nevada courts apply nearly identical factors when assessing the reasonableness of a fees request. Indeed, for simplicity, the Class actually utilized the Ninth Circuit factors in place of the Nevada factors. *See* Fees Motion at 6:11-26. Thus, whether federal law or state law applies will not affect the outcome of the Court's reasonableness analysis. This is especially true since the coupon-settlement provisions of CAFA have no application to Class Counsel's fee request since this is cash settlement.

## 2. The Fee Award is Not Subject to CAFA's Coupon Settlement Provisions[1]

In its Fees Motion, Class Counsel argued that the Settlement was not a "coupon" settlement because – quite simply – ***it is a cash settlement***. All Class Members, without limitation, are absolutely entitled to receive a cash payment of *at least* 80% of the ACRF's they paid. There is no cap on the amount of cash that Defendants might be required to pay, other than

---

[1] Importantly, all of Andrews' arguments regarding whether this should be considered a "coupon settlement" for CAFA purposes are relevant only to the determination of attorneys' fees, not to approval of the Settlement. The Court uses an identical analysis to determine whether a coupon or a non-coupon settlement should be approved. Compare CAFA, 28 U.S.C. §1712(e) (Court must determine whether a coupon settlement is fair, reasonable and adequate), with Fed. R.Civ.P. 23(e)(2) (Court must determine whether any class action settlement is fair, reasonable and adequate).

1   the full 80% of ACRFs wrongly collected plus notice and administration costs and any attorneys'

2   fees, costs and incentive awards as set by the Court.  Alternatively, Class Members who make

3   the voucher election receive those in lieu of a cash payment.  Not one single Class member is

4   obligated to make that choice, however, and each Class member's cash recovery amount is

5   unaffected by the number of claims filed or the voucher choices of other Class Members.

6          The availability of a voucher option simply provides class members with an alternative

7   choice to potentially obtain additional value.  It makes no sense to apply some heightened level

8   of scrutiny to the Settlement simply because a bonus voucher option exists in a cash settlement.

9   None of the concerns about coupons or vouchers is implicated by this Settlement and, not

10  surprisingly, there is no case law cited holding that a purely optional voucher alternative in a

11  cash settlement somehow tarnishes the nature of a cash settlement.

12          Andrews disagrees, stating that:

13          [O]ffering a cash option does not make the voucher any less of a coupon.
            Whether the voucher is a coupon is independent of other types of relief offered to
14          the class. *See True*, 749 F. Supp. 2d at 1069 n.20 (rejecting argument that
            proposed settlement was not a "coupon settlement" since "other relief" was
15          involved); *cf.* 28 U.S.C. § 1712(c) (if proposed settlement includes both coupons
            and other relief, fee restrictions for coupon settlements apply to portion of the
16          recovery of the coupons). Class counsel's interpretation would improperly excise
            § 1712(c) from the statute.

17

18  (Objection at 8:17-26.)   From this erroneous premise, Andrews proceeds to argue that any award

19  of attorneys' fees must await the expiration date on the "coupons" so that the Court can evaluate

20  whether those coupons provided real value to the class.

21          Case law both from and within the Ninth Circuit is to the contrary.  Settlements that

22  provide cash for class members are not coupon settlements subject to heightened scrutiny or

23  delay in awarding fees.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, at 941, 952

24  (9th Cir. 2015) (upholding district court's conclusion that "that CAFA's coupon-settlement

25  provisions should not apply because the Walmart gift cards were sufficiently different from

26  coupons—especially given the fact that claimants could choose between gift cards and cash . . .

27  ."); *Shames v. Hertz Corp.*, 2012 WL 5392159 1, at *54 (S.D. Cal. Nov. 5, 2012) ("Persuasive

28

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street
Suite 600

---

PLAINTIFFS' REPLY TO OBJECTIONS
PAGE 6

1   authority supports Defendants' position that CAFA does not apply to settlements, such as this

2   one, that offer the option between cash and vouchers . . . ."); *see also CLRB Hanson Indus., LLC*

3   *v. Weiss & Assocs., PC*, 465 Fed. Appx. 617, 619 (9th Cir. 2012) ("The settlement gives every

4   class member the option to receive its share of the settlement proceeds in cash or cash-equivalent

5   forgiveness of indebtedness already incurred. This is not a 'coupon settlement' . . . .").[2]

6

7        Accordingly, Andrews' attempt to distort the fundamental character of the subject

8   Settlement must fail.  The Court need not even wade into CAFA's coupon-settlement morass and

9   should simply: (1) hold that CAFA's coupon settlement provisions do not apply; and (2) proceed

10  to evaluate whether the requested attorneys' fees award is reasonable under the law of the Ninth

11  Circuit and/or Nevada state law.

12       3.    Even if CAFA Applied a Voucher for a Free Car Rental is Not a Coupon

13       Even if the CAFA coupon settlement provisions were applicable here, Andrews' CAFA-

14  related arguments must still fail, or be severely restricted in their application.  At a minimum, as

15  discussed below, one cannot use the voucher option in this Settlement to ignore the hard fact that

16  cash payments were available to all Class Members and have been claimed by many Class

17  Members.  *See* Section 4, infra.

18       Even with respect to any portion of this Settlement that is characterized by the voucher

19  option, Andrews' arguments fail.  First, Andrews generally avers that the free car rental vouchers

20  are coupons under CAFA.  He is wrong.  Although the voucher does not cover such costs as

21

22  [2]  The case law which Andrews relies upon for authority is completely inapposite. In *True v. Am. Honda Motor Co.*,
    749 F. Supp. 2d 1052, 1069 (C.D. Cal. 2010), the proposed settlement did not create a cash settlement fund available

23  to all class members, but instead offered all class members a fuel economy DVD (the "DVD") and vouchers. *Id.* at
    1060-61.  In addition, "a subset of class members" was offered cash. *Id.* (emphasis in original).  The class argued

24  that "the proposed settlement [was] not truly a coupon settlement, since other relief, namely the DVD, [was]
    involved." *Id.* at 1069 n.20.  The *True* Court summarily rejected that argument as "unpersuasive." *Id.*  *True* is also

25  distinguishable because only a subset of class members had the right to cash under the settlement; the rest received a
    DVD and some form of voucher.  The Court rejected the argument that the provision of a "Safety DVD" to all class

26  members rendered it a non-coupon settlement.

27  Finally, and contrary to Andrews' assertion, Class Counsel's interpretation of the Settlement would not excise §
    1712(c)'s "mixed relief" provision from CAFA. This settlement is not a "mixed" relief settlement because *all* class

28  members are entitled to receive cash.

1   taxes or optional add-ons, the base rental is still free.  There is no requirement that the Class

2   members do additional business by purchasing *optional* add-ons from the Defendants.  And the

3   fact that taxes and fees might also be paid to government authorities is simply irrelevant.

4       Second, Andrews' argument that a voucher for a free product is necessarily a coupon has

5   not been adopted in this Circuit (or any other Circuit), and the cases Andrews relies upon are

6   easily distinguishable. For example, Andrews claims that under *In re Online DVD-Rental*

7   *Antitrust Litig.*, the voucher for a free car rental is a coupon because it forces the Class to do

8   business with the Defendants.  As noted previously, however, *In re Online DVD-Rental Antitrust*

9   *Litig.* actually *supports* the Class' position that the Settlement is not subject to CAFA's coupon

10  settlement provisions **because the cash option does not force anyone in the Class to ever do**

11  **business with the Defendants again**.  Accordingly, Andrews' entire argument fails because he

12  ignores the critical analysis central to that case.

13      Andrews also argues that the voucher should be considered a coupon pursuant to *Redman*

14  *v. Radioshack Corp.*, 768 F.3d 622, 634-635 (7th Cir. 2014).  In *Redman*, each class member

15  who responded to the notice of proposed settlement would receive a $10 coupon that it could use

16  at a RadioShack store. *Id.* at 628. The Court concluded that because the class member would not

17  receive any change, the customer was unlikely to purchase anything *less than* $10.00, since he or

18  she would lose money.  *Id.* at 636. Indeed, the Court concluded that if coupon is defined as a

19  discount, RadioShack's coupons "are mainly coupons" and "only occasionally vouchers." *Id.*

20  Finally, the Court also found it to be very significant that the coupons were worth less than cash.

21      The concerns in *Redman* are irrelevant here.  First, and obviously, each Class Member

22  can select cash rather than a voucher. Second, each Class Member can select a voucher that

23  exceeds the amount of cash he or she can receive.[3] Finally, the vouchers here cover the full

24  amount of the base rental rate, creating no issue of change or whether the voucher would be

25  sufficient to effect an entire purchase. In sum, the Court should reject Andrews' argument that

26  the vouchers are coupons, and hold that the Settlement and the fee request are not subject to

27

28

---

[3] It is also important to point out that in *Redman* each class member could only receive one coupon.  *Id.* at 628. In the present case, many Class Members are entitled to receive more than one voucher under the Settlement.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street
Suite 600
Reno, Nevada 89501

1    CAFA's coupon settlement provisions.  This Court thus need not consider the Objector's request

2    that if the Settlement is approved then the Court must wait until all vouchers are redeemed before

3    it considers whether Class Counsel's fee request is reasonable.

4                    4.    Even Under CAFA, Counsel's Attorneys' Fees Request is Reasonable

5           Andrews argues that pursuant to *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1186 (9th

6    Cir. 2013), Section 1712(a) must be applied to any "coupon portion" of the case. In other words,

7    the Court must base part of its fee on the value of the coupons redeemed. *See* Objection at 11:10-

8    12 ("[t]he Ninth Circuit held that CAFA 'require[s] the district court to calculate the redemption

9    value of the coupons before awarding any attorneys' fees that **[a]re 'attributable to' the coupon**

10   **relief**.'" (Emphasis supplied).

11          Andrews is simply wrong. The Court in *In re HP Inkjet Printer Litig.*, quite plainly held

12   that "a district court may award lodestar fees under subsection (b)(1) but only where the

13   settlement is based 'in part' on coupon relief." *Id.*, 716 F.3d at 1184.  Accordingly, if one adopts

14   Andrews' position that the vouchers are coupons, and that the Settlement is in part a coupon

15   settlement, then *In re HP Inkjet Printer Litig.* actually ***supports*** the application of a lodestar

16   without consideration of the redemption value of the coupons.[4]

17           However, even Andrews' interpretation of *In re HP Inkjet Printer Litig.* would be

18   distinguishable from the present case.

19          *In re HP Inkjet Printer Litig.*, the settlement involved: (1) pure coupon relief to the class

20   (i.e., e-credits that could be used to receive discounts on future purchases of HP printers or ink);

21   (2) injunctive relief (i.e., requiring HP to make certain disclosures on its website); and (3) the

---

[4] In *In re HP Inkjet Printer Litig.*, the Court also noted:  "Typically, courts try to ensure faithful representation by tying together the interests of the class members and class counsel. That is, courts aim to tether the value of an attorneys' fees award to the value of the class recovery . . . . Where both the class and its attorneys are paid in cash, this task is fairly effortless. The district court can assess the relative value of the attorneys' fees and the class relief simply by comparing the amount of the cash paid to the class. The more valuable the class recovery, the greater the fees award.  716 F.3d at 1186.

      The primary focus of the Court here should thus be on the value that the settlement brings to the Class, i.e., approximately $20,000,000. Since courts look to the total available value of cash in claims-made settlements, the Court can easily compare the $20,000,000 value of the settlement with the requested fees and costs (i.e., $2,625,000). The fact that there is an option to obtain a more valuable voucher does not change this analysis.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street
Suite 600
Reno, Nevada 89501

payment of class counsel's attorneys' fees and costs in cash. *Id.* at 1176.  The Court found that because the settlement provided coupon relief *and* equitable relief, §1712(c) applied to any award of attorneys' fees. *Id.* at 1184-85. The Court held that "under subsection (a), the court must determine a reasonable contingency fee based upon the actual redemption value of the coupons awarded. Second, under subsection (b), the court must determine a reasonable lodestar amount to compensate class counsel for any non-coupon relief obtained (*i.e.*, the injunctive relief)." Id.[5]

Further, the present case is not a "mixed" settlement in the sense that §1712(c) contemplates.  Every Class Member can elect to choose cash, with merely the option of choosing more valuable vouchers instead.  This is critical because of the purpose of the Class Action Fairness Act.  As the *Inkjet* Court explained:

> Where class counsel is paid in cash, and the class is paid in some other way, for example, with coupons, comparing the value of the fees with the value of the recovery is substantially more difficult. Unlike a cash settlement, coupon settlements involve variables that make their value difficult to appraise, such as redemption rates and restrictions. . . . Of course, consideration of these variables necessarily increases the complexity of the district court's task – comparing the ultimate value of the coupon relief with the value of a proposed fee award.

*Id.* at 1179.

None of these concerns are present in this case for the very simple reason that each and every Class Member can choose cash.  Accordingly, it is not difficult to compare the total value that the Class can receive under the Settlement with the attorneys' fees request and decide whether the fee is reasonable.

Further, to the extent that Class Members select vouchers over cash, the Court can easily conclude that the vouchers are more valuable to those Class Members than cash. (Motion for Final Approval at p.7) Obviously, Class Members who request one or more voucher(s) must logically believe that the voucher(s) are more valuable to that Class Member than the cash

---

[5] Curiously, Andrews in the instant case argues that 28. U.S.C. § 1712(c) should apply, but he does not follow the procedure set forth in § 1712(c) wherein an attorneys' fees award is calculated for the coupon portion of the settlement and a separate attorneys' fees award is calculated for the non-coupon portion of the settlement. Instead, Andrews conducts a ratio analysis under *Redman* – which is a Seventh Circuit case *that involved 100% coupons* and to which only § 1712(a) could apply. *See Redman*, 768 F.3d at 628, 634-35.  Stated simply, the analysis in *Redman* is completely inapplicable to the instant case.  Accordingly, Andrews' Objection simply does not make any sense even within the existing CAFA framework.

Robertson, Johnson, Miller & Williamson
50 West Liberty Street
Suite 600
Reno, Nevada 89501

payment that could have been obtained. Thus, the vouchers must be worth at least as much as the cash to those Class Members. And, on a more objective, class-wide basis, Class Counsel have provided ample evidence to indicate a reasonable value for the vouchers of $40/day.

In sum, it is not logical to apply § 1712(c) to this case because the instant settlement is not a "mixed" relief settlement. Instead, all Class Members can claim cash, and no Class Members are *required* to accept vouchers or coupons.

Further, §1712(a) does not apply independently in this case either. The legislative history makes clear that application of § 1712(a) is not mandatory to any coupon portion of a settlement: It provides in pertinent part:

> In some cases, the proponents of a class settlement involving coupons may decline to propose the attorney's fees based on the value of the coupon-based relief provided by the settlement. Instead, the settlement proponents may propose that counsel fees be based upon the amount of time class counsel reasonably expended working on the action. Section 1712(b) confirms the appropriateness of determining attorneys' fees on this basis in connection with a settlement based in part on coupon relief. As it stated on its face, nothing in this section should be construed to prohibit using the "lodestar with multiplier" method of calculating attorney's fees.

S. Rep. 109-14 at 30 (2005).

In fact, if CAFA's coupon-settlement provisions applied to this case – which they do not – the most sensible conclusion would be to apply § 1712(b)(1) using its plain language. It states:

> If a proposed settlement in a class action provides for a recovery of coupons to class members, and **a portion of the recovery of the coupons is not used to determine the attorney's fee to be paid to class counsel**, *any* **attorney's fee award *shall* be based upon the amount of time class counsel reasonably expended *working on the action***.

(emphasis supplied).

Since the recovery of coupons is not a condition precedent to a fee award here – which unequivocally means that a "a portion of the recovery of coupons is not used to determine the attorney's fee to be paid to class counsel" -- § 1712(b)(1) actually provides for the lodestar approach which is sought here. *See* § 1712(b)(1) (*any* attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action (i.e., the entire case)). Further § 1712(b)(2) specifically authorizes the application of a lodestar *with multiplier*.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street
Suite 600
Reno, Nevada 89501

PLAINTIFFS' REPLY TO OBJECTIONS
PAGE 11

1   *See* § 1712(b)(2) ("[n]othing in this subsection shall be construed to prohibit application of a

2   lodestar with a multiplier method of determining attorneys' fees.")

3             5.   Andrews' Arguments Based on *Bluetooth* Have No Merit

4          Andrews argues that the Settlement should be rejected under *In re Bluetooth Headset*

5   *Products Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011), because the parties must have made a selfish

6   deal where attorneys' fees payable under an agreed or so called "clear sailing" provision are

7   more than 25% of the total amount ultimately paid out together with  the attorneys' fees and

8   costs. In so doing, the Andrews ignores the actual, undisputed facts concerning the fee

9   negotiations and misconstrues *Bluetooth.*

10          Under *Bluetooth*, where a settlement is negotiated after class certification, consideration

11   of the traditional *Churchill* factors is all that is required for final approval.  *See Bluetooth*, 654

12   F.3d at 946.  Moreover, even if the Court engages in the *Bluetooth* pre-certification settlement

13   analysis, both the Settlement and the fees should be approved unless there is evidence of the self-

14   dealing that the Court in *Bluetooth* was concerned about.  Here, the parties negotiated a valuable

15   Settlement for Class Members which offers each Class Member cash equal to at least 80%  of the

16   concession recovery fee charged or, if the Class member chooses, one or more vouchers, which

17   are valued even higher than the cash.  Critically, the parties had agreed that the proposed

18   Settlement would  be  submitted to the Court for approval even if the parties did not reach any

19   agreement among themselves as to the amount of fees that would be requested or that would not

20   be challenged by defendants. Only at that point did the parties then turn to discussion of the fee

21   and a determination by both sides that there was a benefit in setting a cap on what Plaintiffs'

22   Counsel could request in exchange for Defendants agreeing not to challenge a request at that

23   amount. The Settlement is not contingent on that amount being awarded, and the Defendants'

24   non-opposition to that amount is but one factor that this Court can evaluate.

25            ***i.***     ***The Bluetooth Analysis Does Not Apply***

26          Andrews argues that the Settlement should be rejected because of what he wrongly

27   portrays as multiple *Bluetooth* signs of self-dealing.  *See* Objection at 12-20.  However, in

28   *Bluetooth*, the Ninth Circuit held that such scrutiny ***is not necessary where the settlement***

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street
Suite 600
Reno, Nevada 89501

PLAINTIFFS' REPLY TO OBJECTIONS
PAGE 12

1   *agreement is negotiated after class certification*.  The Court found that if the *Churchill* factors

2   favor settlement approval then the settlement may be approved.   Specifically, the *Bluetooth*

3   Court stated as follows:

> To guard against th[e] potential for [collusion], Rule 23(e) of the Federal Rules of
> Civil Procedure requires court approval of all class action settlements, which may
> be granted only after a fairness hearing and a determination that the settlement
> taken as a whole is fair, reasonable, and adequate. Fed.R.Civ.P. 23(e)(2) . . . The
> factors in a court's fairness assessment will naturally vary from case to case, but
> courts generally must weigh [the Churchill factors].  ***But where, as here, a
> settlement agreement is negotiated prior to formal class certification,
> consideration of these eight Churchill factors alone is not enough* to survive
> appellate review. *Prior to formal class certification, there is an even greater
> potential for a breach of fiduciary duty owed the class during settlement.
> Accordingly, such agreements must withstand an even higher level of scrutiny
> for evidence of collusion or other conflicts of interest than is ordinarily
> required under Rule 23(e) before securing the court's approval as fair.***

11   *Bluetooth*, 654 F.3d at 946-47; *see also In re Hydroxycut Mktg. & Sales Practices Litig.*, 2014

12   WL 6473044, at *5 (S.D. Cal. Nov. 18, 2014) ("When a settlement agreement is negotiated prior

13   to formal class certification, the court must also scrutinize the settlement for evidence of

14   collusion or other conflicts of interest.") (citing *Bluetooth)*, ; *Kearney v. Hyundai Motor Am.*,

15   2013 WL 3287996, at *4 (C.D. Cal. June 28, 2013) ("Before approving a class-action settlement,

16   Rule 23 of the Federal Rules of Civil Procedure requires the Court to determine whether the

17   proposed settlement is fair, reasonable, and adequate.   To determine whether a settlement

18   agreement meets these standards, a district court must consider [the *Churchill*] factors. . . In

19   addition to these factors, where "a settlement agreement is negotiated *prior* to formal class

20   certification," the Court must also satisfy itself that "the settlement is not the product of collusion

21   among the negotiating parties."  ); *see also In re Ferrero Litig.*, 583 F. App'x 665, 668-69 (9th

22   Cir. 2014) (upholding fee award, finding indicia of collusion discussed in *In re Bluetooth* need

23   not be considered where settlement was reached after class certification, produced both monetary

24   and injunctive relief for the class, and the fee satisfied the traditional fee analysis).

25        On its face, therefore, since the Class was already certified long before any fee

26   negotiations occurred, *Bluetooth* is simply not applicable and only the Churchill factors should

27   be evaluated. As Plaintiffs discussed at length in their Fee Motion, the *Churchill* factors support

28   approval and the fee request is appropriate.  In particular, the value to the class is undeniable.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street
Suite 600
Reno, Nevada 89501

PLAINTIFFS' REPLY TO OBJECTIONS
PAGE 13

Plaintiffs have shown that the amount offered in the Settlement makes available a significant recovery for every Class Member. As of April 20, 2015, 137,294 elections, comprising 79,013 in rental days and $1,303,184 in cash, had been received for benefits which yielded each class member a value that is equal to at least 80% of their ACRF payments. Dkt. No. 136; *see also Shames*, 2012 WL 5392159 at *6 (finding the settlement amount fair and reasonable in light of actual damages by comparing the amount offered to each class member to each class members' estimated actual damages, stating "[p]laintiffs aver that each class member sustained approximately $3 in actual damages for each day they rented Defendants' cars. When compared to the estimated actual damages, the $2 cash option represents a recovery of at least 67% of actual damages."). Moreover, in this case a single-day voucher, the value of which can range from $40 to more than $100, can represent a minimum of value far *above* the ACRF paid. Thus, while the cash option compensates each Class Member for nearly all of – or even slightly more than – his or her actual ACRF payment(s), the voucher option potentially compensates each Class Member for much more than their actual ACRF payment(s). Indeed, Andrews does not present any cogent arguments as to why the Churchill factors do not support the requested fees.

### ii.        *Even If the Bluetooth Analysis Did Apply, There is No Basis for Finding the Settlement Collusive*

The essential concern in *Bluetooth* (and other cases cited by Andrews) was the potential for enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair resolution for the class.[6] There is no evidence in this case of an unfair resolution, of excessive attorneys' fees or of the existence of any *quid pro quo* bargain to the detriment of the class. It defies credulity to suggest that there was a "quid pro quo" where it is undisputable that the Settlement relief for the Class was determined before fees were addressed.

---

[6] In *Pearson*, an out-of-circuit case, the Court was particularly concerned with a settlement which provided $1.93 million in fees to plaintiffs' counsel, only $862,284 in claims filed by the class members, and injunctive relief which the court found was superfluous, or even adverse to consumers. In contrast, here over $4,560,000 worth of claims have been filed by Class Members **to date** (with 2 months still remaining for filing claims) and counsel is requesting fees and expense of $2,625,000. This is well within the range set by *Pearson*. *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014) ("the presumption should we suggest that attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel.")

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street
Suite 600
Reno, Nevada 89501

1      Class Counsel also indicated their willingness to take the Settlement to the Court without

2   any agreement on the amount of fees or costs, and to have those fees determined by this Court.

3   It is therefore contrary to fact to infer from the parties' ultimate agreement to an uncontested fees

4   and cost application that there was any *quid pro quo*.  Defendants had every incentive to bargain

5   hard to keep fees low.  *See Shames*, 2012 WL 5392159 at *13 (no evidence of collusion in

6   negotiation of the uncontested attorneys' fee request where the fee amount was negotiated

7   separately and only after the class settlement was finalized, and the parties agreed the class

8   settlement would not hinge on whether they could successfully negotiate a fee amount, noting

9   "therefore, the parties took the risk that they would not be able to successfully negotiate a

10  resolution of the attorneys' fee issue and the matter would be decided by the Court without their

11  guidance.  Individually, each side also took the risk that the final fee amount would be more or

12  less than they envisioned.")

13      There is thus no inference of collusion to be drawn from the terms of this Settlement,

14  particularly where this case is contrasted with *Bluetooth* and the other cases cited by Andrews.

15  In *Bluetooth*, class members personally received nothing under the settlement; the only

16  consideration offered was *cy pres* and injunctive relief.  Similarly, *Redman* was a coupon-only

17  settlement, in which the Court determined the allocation was unfair where class counsel settled

18  for a mere 10 cents on the dollar (assuming full value of $10 coupons) and class counsel sought a

19  $1 million fee award, which was a 1.25 multiplier.  *See Redman*, 768 F.3d at 638-39.

20      In contrast, here the value available to every Class member is substantial.  All Class

21  members are entitled to receive at least 80% of their concession recovery fee(s) in cash.  In fact,

22  many Class Members are entitled to over 100% of the concession recovery fee paid -- either

23  because they choose more-valuable vouchers or because they paid less than five dollars and the

24  minimum cash amount offered to Class Members is five dollars.  As in *Shames*, 2012 WL

25  5392159 at *13, there is "no evidence that [p]laintiffs negotiated away anything to garner a

26  higher fee amount" since the recovery provides such a high percentage of the improper fees

27  collected.  Id.  (cash option represented at least two-thirds recovery of actual estimated damages

28  and the voucher  option represented even more than the actual damages.)

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street
Suite 600

6.   <u>The Requested Fees Are Reasonable</u>

Plaintiffs' requested fees are reasonable under the lodestar method.[7]   Andrews does not argue that applying the lodestar analysis to this case would result in an excessive fee.  He also does not allege that that the benefit achieved, the risk of litigation, Class Counsel's quality of work, the uncertain nature of receiving any fee, the financial burden carried by Class Counsel, and awards in similar cases do not factor favorably in adjusting the lodestar upward.   Indeed, as discussed at length in the Fee Motion, the fees requested here are reasonable in light of the results achieved and the aforementioned factors.

Andrews does argue, however, that the fee is unreasonable because the percentage of recovery cross check must be based on the amount the Class actually receives and not the amount available to the Class Members. *See* Dkt. 133 at 14-15.  In the Ninth Circuit, however, as well as many other jurisdictions, it is undisputed that the total value of the settlement available to the Class is used for cross-check purposes, not some measure of payments actually made.  *See Shames*, 2012 WL 5392159 at *12 (rejecting objector's argument that attorneys' fees must be linked to the actual value of the settlement, noting that "even under the common fund approach – which, again the Court does not apply here – the Court is not required to compare attorneys' fee requests against the actual settlement payouts."); *Lopez v. Youngblood*, 2011 U.S. Dist. LEXIS 99289, at *32–*33 (E.D.Cal. Sept. 1, 2011) ("Where there is a claims-made settlement, such as here, the percentage of the fund approach in the Ninth Circuit is based on the total money available to class members, plus costs (including class administrative costs) and fees. It is well established that, in claims made or class reversion cases where there is a maximum fund, and unclaimed funds revert to the defendant, it is appropriate to award class fund attorneys' fees based on the gross settlement fund.")

Moreover, even if the Court were to find that the value of the Settlement is the amount the Class "*actually* receives," the Objector miscalculates the amount.   *See* Objection at 15

---

[7] Andrews does not make any serious argument that the lodestar method is not appropriate in this case, and, indeed he could not do so.  *See Shames*, 2012 WL 5392159 at 17 (finding the lodestar method appropriate in class actions brought under fee shifting statutes.)

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street
Suite 600

(arguing the attorneys' fee request must be measured against (1) the number of redeemed vouchers (see 28 U.S.C. 1712(a)), and (2) the actual amount of cash claims).  The relevant number here, however, is not  the number of redeemed vouchers plus the actual amount of cash claimed, but, rather, it is the total value of the cash claimed, plus the value of the vouchers claimed,  plus  notice and administrative costs .  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949-50 (9th Cir. 2015) (rejecting argument that the District Court erred by calculating the fee award as a percentage of the overall settlement fund, including the total dollar value claimed instead of the value redeemed where the settlement did not fall under CAFA.); *see also Id.* at 953 ("The district court did not abuse its discretion in calculating the fee award as a percentage of the total settlement fund, including notice and administrative costs, and litigation expenses. We have repeatedly held "that the reasonableness of attorneys' fees is not measured by the choice of the denominator.")   Here the percentage recovery cross-check would be 32% based solely upon claims made to date, even while the claims cutoff is still months away.[8]

This cross-check is within the reasonable range, especially where this fee is brought pursuant to a fee-shifting statute.[9]  *See Shames*, 2012 WL 5392159 (noting  "the lodestar assures counsel undertaking socially beneficial legislation (as legislatively identified by the [antitrust] statutory fee shifting provision) an adequate fee irrespective of the monetary value of the final relief achieved for the class."); *Sobel* ("Fee-shifting is particularly important in those cases where

---

[8] This number is determined by adding the notice and administrative costs of ($804,339.95) plus the amount of cash claimed by Enterprise renters ($500,185.30) plus the amount of cash claimed by Vanguard renters ($902,998.74) plus the number of free rental days claimed by Enterprise renters multiplied by $40 ($1,160,68) plus the number of free rental days claimed by Vanguard renters multiplied by $40 ($1,999,840) plus the attorneys' fees ($2,625,000) and then dividing this amount by the attorneys' fees ($2,625,000).  Even if the Court were to disregard the notice and administrative costs (which is not done in cross-check analysis but would be done according to the objector's proportionality analysis) the percentage would be 41%, which is still within the reasonable range according to cases cited by the Objector.  *See Pearson.*, 772 F.3d at  782 ("the presumption should . . . be that attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel.") This is also a far-cry from the concerns in *Bluetooth*, where the Court noted "that the amount awarded [to Plaintiff's Counsel] was 83% of the total amount *defendants were willing to spend* to settle the case").

[9] Additionally, according to the Objector's analysis, the fund in this case would be a "small fund" case (under $10 million).  Courts often find a benchmark higher than 25% is appropriate in cases below $10 million.  *See Rigo v. Kason Indus., Inc.*, No. 11-CV-64-MMA DHB, 2013 WL 3761400, at *7 (S.D. Cal. July 16, 2013) ("The Ninth Circuit has held that 25% of the gross settlement amount is the benchmark for attorneys' fees awarded under the percentage method. *Vizcaino*, 290 F.3d at 1047. Case law surveys suggest that 50% is the upper limit, with 30–50% commonly being awarded in cases in which the common fund is relatively small. *See Rubenstein, Conte and Newberg, Newberg on Class Actions at § 14:6.

the potential relief is nominal damages or an injunction. *Id.* Indeed, NRS 482.31585 is a consumer protection statute which consigns enforcement of its provisions to private parties like Plaintiff.") *In Shames*, the Court noted "where, as here an [] action truly seeks to vindicate the public's interest when it otherwise may have been ignored, many benefits may also inure in favor of society at large." The same holds true here.[10]

### 7.   A Multiplier is Appropriate

Andrews' argument that a multiplier greater than one is inappropriate in this case is not legally supportable.   Andrews first argues that if the Class believes statutory fee shifting is available under the Settlement, then no multiplier can be awarded under federal law.   Objection at 20:10-13. As was noted earlier, however, the application of state law is appropriate in this case. Regardless, whether federal law or state law applies really does not matter. This is because the case settled before a final judgment was entered and there will be no statutory fee-shifting *post-judgment*.   Accordingly, the cases that restrict lodestar multipliers in the context of post-judgment fee-shifting statutes are inapplicable.

Andrews' next argument is not really an argument at all; it is simply a select collection of cases that broadly state lodestars are often sufficient without enhancement multipliers and that multipliers are usually only awarded under special circumstances. *See, e.g.,* Objection at 20:9-27.   However, Andrews fails to provide any analysis of why a reasonable lodestar multiplier is not appropriate in *this* case.

In its Fees Motion, the Class argued that this Court should apply the lodestar method and then determine whether to apply a multiplier. *See* Fees Motion at 6:5-26. Because the Nevada law factors and Ninth Circuit factors are essentially the same, the Motion discussed the Ninth Circuit factors for simplicity.   In great detail, Class Counsel explained that: (1) the result obtained was outstanding; (2) the litigation involved substantial risk; (3)  the quality of the work

---

[10] Andrews also argues the decision to set the claims deadline two months after the fairness hearing indicates self-dealing because the total number of vouchers issued will not be known at the time of the fairness hearing. *See* Dkt. No. 133 at 19.   This objection is misguided, as is Andrews' rampant speculation that the parties "designed" this process to disguise an excessive fee request.   The extended time for the claims deadline allows the Class Members (a number of whom are outside the United States) additional time to decide whether to choose vouchers or cash,  and submit their claims, without holding up the fairness hearing and the process of approving the Settlement.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street
Suite 600

1  performed was complex;  (4)  the case was undertaken on a contingent basis; and 5) numerous

2  other cases, including the substantially-similar Hertz case, awarded multipliers at or in excess of

3  what Class Counsel has requested.  *See* Fees Motion, at pp. 7-10. However, rather than address

4  the relevant factors, Andrews simply cites to several cases which stand for rather general

5  propositions.  For example, Andrews claims that lodestar multipliers should only be allowed in

6  rare and exceptional circumstances. Yet, the Fees Motion identified numerous similar cases

7  where courts awarded multipliers, including the *Hertz* case.  Since Andrews failed to provide any

8  meaningful argument, this Court should not hesitate to enhance the Class Counsel's lodestar with

9  a reasonable multiplier due to the risk of this case and the excellent result achieved.

10  ### 8.   The Small Number of Objectors Favors Approval

11      In evaluating a settlement, among other factors, "the absence of a large number of

12  objectors supports the fairness, reasonableness, and adequacy of a settlement."  *Shames*, 2012

13  WL 5392159, at *8.  *See also In re Merck & Co., Inc., Vytorin ERISA Litig*, No. 08-cv-285, 2010

14  WL 547613, at *10 (D.N.J. Feb. 9, 2010) ("the Court evaluates the presence or absence of

15  substantial objections by members of the class to the settlement terms and/or fees requested by

16  counsel").  Here, only six Class Members filed objections.  This is very close to zero percent of

17  the entire Class.   Similarly, 6 objections out of the nearly 140,000 claims filed so far is also very

18  close to zero percent.   These very minute numbers favor approval.  *Id*.  (finding nine formal

19  objections in a class of approximately 3.5 million potential class members favored approval).

20      Andrews argues that the low number of objections does not indicate approval of the

21  settlement because objections are not cost-beneficial and because of the "vociferousness of the

22  objectors."  (Dkt. No. 133 at 21-22).   A comparison of the small number of objections in this

23  Settlement to the objections in the previously-rejected settlement undermines Andrews'

24  argument.   In the previous settlement, there were over sixty five objections filed, and most of

25  those were far more vociferous than the relatively-benign objections received here.  As clearly

26  shown by the previously-rejected settlement, many people will take time to strongly object if

27  they believe the settlement is unfair.  Thus, the Court should take into consideration that only a

28  handful of minor objections were received from more than 1.2 million Class Members.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street
Suite 600
Reno, Nevada 89501

The only real objection of substance beside that of Andrews is from Raymond Sterling, who objects to the proposed Settlement because when he tried to use a voucher that had been issued by National in the *Shames* case and he had trouble redeeming such voucher. He also objects to the use of the claims process.  (Dkt. No. 126 and 131).  In regards to his trouble with the voucher, National admits it made an error which it subsequently fixed.  There is no reason to assume that such an error will occur in this case, and it is hard to imagine rejecting the current settlement based on one problem in an unrelated litigation.  Accordingly, the Class' reaction to the proposed Settlement has been overwhelmingly positive, both in terms of the minute number of objections and the large number of settlement registrations that have already occurred.

## III.   CONCLUSION

Plaintiffs respectively request that the Court award counsel fees and costs in the amount of $2,625,000, as well as incentive awards of $10,000 each to the named plaintiffs.

Date:  April 27, 2015

Respectfully submitted,

By:  */s/ Jonathan Joel Tew*
G. David Robertson, Esq., NV SBN 1001
Jonathan Joel Tew, Esq., NV SBN 11874
ROBERTSON, JOHNSON,
MILLER & WILLIAMSON
50 W. Liberty Street, Suite 600
Reno, NV  89501
(775) 329-5600
gdavid@nvlawyers.com
jon@nvlawyers.com

BERGER & MONTAGUE, P.C.
Susan Schneider Thomas, Esq.
Arthur Stock, Esq.
Shoshana Savett, Esq
1622 Locust Street
Philadelphia, PA  19103
(215) 875-3000
sthomas@bm.net
astock@bm.net

*Attorneys for Plaintiffs*

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street
Suite 600
Reno, Nevada 89501

PLAINTIFFS' REPLY TO OBJECTIONS
PAGE 20

1
2
3
4
5
6
7

## CERTIFICATE OF SERVICE

8          Pursuant to Fed. R. Civ. P. 5(b) and Local Rule 5-4, I hereby certify that I am an
9  employee of Robertson, Johnson, Miller & Williamson, over the age of eighteen, and not a
10 party to the within action.  I further certify that on the 27th day of April, 2015, I electronically
11 filed this **PLAINTIFFS' REPLY TO OBJECTIONS TO MOTION FOR APPROVAL OF**
12 **SETTLEMENT AND MOTION FOR AWARD OF ATTORNEYS' FEES AND**
13 **INCENTIVE PAYMENTS FOR CLASS REPRESENTATIVES** and thus, pursuant to LR 5-
14 4, caused same to be served by electronic mail on the following Filing Users:

15
16 BOWEN HALL
   Dan C. Bowen
17 dbowen@bowenhall.com

18 CROWELL & MORING LLP
19 Gregory D. Call
   gcall@crowell.com
20
   Janine L. Scancarelli
21 jscancarelli@crowell.com

22 J. Daniel Sharp
   dsharp@crowell.com
23

24          Dated this 27th day of April, 2015.
25

26                                              */s/Jonathan Joel Tew*
27                              An Employee of Robertson, Johnson, Miller & Williamson
28

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street
Suite 600
Reno, Nevada 89501