UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LYDIA LEE and CAROLYN BISSONETTE, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ENTERPRISE LEASING COMPANY–WEST, a Delaware LLC; and VANGUARD CAR RENTAL USA, LLC, a Delaware LLC, <br><br> Defendants. | 3:10-CV-00326-LRH-WGC <br><br> ORDER |

Before the Court is Plaintiffs Lydia Lee and Carolyn Bissonette's ("Plaintiffs") Motion for Final Approval of Settlement (Doc. #124)[1] and Motion for Attorney Fees, Costs, and Incentive Awards (Doc. #125). Defendants Enterprise Leasing Company–West, LLC and Vanguard Car Rental Group, Inc. ("Defendants") filed a memorandum in support of Plaintiffs' Motion. Doc. #134. Six class members filed objections to the proposed settlement (Doc. ##117, 118, 119, 120, 131, 133, 135),[2] to which Plaintiffs and Defendants replied (Doc. ##137, 138). The Court held a Fairness Hearing on May 12, 2015, and heard from Plaintiffs, Defendants, and Objector William Andrews ("Andrews"). After considering the submissions of Plaintiffs and Defendants, the

---

[1] Refers to the Court's docket entry number.

[2] Objector Raymond Sterling's objection was filed in two separate documents. Doc. ##126, 131.

objections submitted by class members, and the arguments from the May 12, 2015, Fairness Hearing, the Court shall grant Plaintiffs Motions for Final Approval of Settlement, and for Attorney Fees, Costs, and Incentive Awards.

## I.     Facts and Procedural History

This is a class action filed on behalf of persons who rented cars at Nevada airports from Defendants.  In return for the right to operate on-site at these Nevada airports, rental car companies like Defendants are required to pay a percentage of their gross revenues to the airports as "concession fees."  The companies pass along the fees to their customers as surcharges labeled "airport concession recovery fees" ("ACRF").  At all relevant times, Defendants "unbundled" the surcharges from the base rental rate, so that the rental rate quoted to customers did not include the additional "airport concession recovery fee," which was itemized separately in the rental agreement.

### A.  Procedural Background

Plaintiff Lydia Lee filed the underlying class action Complaint on June 3, 2010.  Doc. #1. On June 24, 2014, the Court granted summary judgment in favor of Plaintiffs, finding that Defendants' practice of unbundling the surcharges from the base rental rate violated Nevada Revised Statute ("NRS") § 482.31575.  Doc. #102.  The Court further determined that Plaintiffs were entitled to restitution of any airport concession recovery fees that they paid to Defendants during the class period.  *Id.* at 22-30.  Finally, the Court granted class certification pursuant to Federal Rule of Civil Procedure 23.  Doc. #103.  On December 12, 2014, the Court granted Plaintiffs' Motion for Preliminary Approval of Settlement and Approval of the Form of Notice. Doc. #116.  The Order stated that potential class members could opt-out of the settlement or file objections with the Court on or before April 13, 2015 (*id.* at 3-4), and that the Court would hold a Fairness Hearing on Tuesday, May 12, 2015, at 10:00 a.m (*id.* at 4).  The Court instructed class members to submit their registration forms to recover under the settlement no later than sixty (60) days after the Fairness Hearing.  *Id.* at 5.

On March 30, 2015, Plaintiffs filed a Motion for Final Approval of Settlement (Doc. #124), and a Motion for Attorney Fees (Doc. #125). These Motions are unopposed by Defendants (Doc. #134), but seven class members have filed objections with the Court (*see* Doc. ##117, 118, 119, 120, 131, 133, 135).

### B. Notice and Settlement Details

Pursuant to the Court's preliminary approval of settlement, Class Notice has been distributed to a total of 1,276,448 class members by U.S. Mail and email. Doc. #124 at 5. Each notice includes a unique registration number, and directs class members to a dedicated website and toll-free telephone number where the class member can enter his or her registration number and choose a cash or voucher option for recovery of the ACRF charged to that class member.

The proposed settlement provides that class members can choose to receive a check worth 80% of the amount that they were wrongfully charged, or vouchers that represent at least 100% of the amount that they were wrongfully charged. *Id.* at 2. Since the minimum cash recovery is $5.00, those class members who were wrongfully charged less than $5.00 will recover more than they were wrongfully charged. *Id.* at 7. Plaintiffs represent that if all class members elect vouchers, the settlement is worth $70 million, and if all class members elect cash, the settlement is worth $19.3 million.[3] *Id.*

///

---

[3] At the Fairness Hearing, class counsel acknowledged that these figures do not include interest to represent the time value of money because such interest was not agreeable to both parties under the settlement. Nevada law recognizes a right to prejudgment interest following final judgments for any debt, damages, or costs. NRS § 17.130 ("When no rate of interest is provided by contract or otherwise by law, or specified in the judgment, the judgment draws interest from the time of service of the summons and complaint until satisfied, except for any amount representing future damages, which draws interest only from the time of the entry of the judgment until satisfied, at a rate equal to the prime rate at the largest bank in Nevada as ascertained by the Commissioner of Financial Institutions on January 1 or July 1, as the case may be, immediately preceding the date of judgment, plus 2 percent."); *see Schuette v. Beazer Homes Holdings Corp.*, 124 P.3d 530, 549-50 (Nev. 2005) (awarding prejudgment interest on an entire verdict that represented only past damages). Although the class would have been entitled to prejudgment interest following final judgment in this case, the Court understands that this was a necessary concession to reach a settlement, and does not disturb that agreement between the parties.

If a class member elects to receive a voucher, the voucher will be valid for two years from the date of issuance, and can be used by anyone in the class member's family. *Id*. The amount of a voucher will depend on the total ACRF that was charged to that class member:

> All class members, regardless of how much they paid in airport concession recovery fees, will be entitled to choose at least one voucher. Class members who paid airport concession recovery fees of at least $20, but less than $40 will be entitled to two vouchers; class members who paid fees of at least $40, but less than $60 will be entitled to three vouchers; class members who paid fees of at least $60, but less than $80 will be entitled to four vouchers; and class members who paid fees of $80 or more will be entitled to five vouchers.

*Id*. Enterprise class members will receive vouchers that are valid for Enterprise rentals, and Vanguard class members will receive vouchers valid for Alamo and/or National rentals. *Id*. The vouchers are not limited to Reno/Tahoe International Airport, and can be used nationwide. *Id*.

Defendants have agreed to pay attorney fees up to $2,500,000, and up to $125,000 in costs. This represents a lodestar of $1,205,134.50, with a multiplier of approximately 2.07.[4] This figure also includes up to $10,000 in service awards to the two named plaintiffs. *Id.* at 8.

**C. Objections to the Proposed Settlement**

Six class members filed objections to the proposed settlement. *See* Doc. ##117, 118, 119, 120, 126, 131, 133, 135. The most comprehensive of these objections, on behalf of Andrews, refers to the settlement as a "coupon settlement," which "are disfavored because they often fail to disgorge illegal profits and instead force future business with the defendant." Doc. #133 at 8 (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006)). Andrews also objects to class counsel's fee award because he argues that it shows signs of impermissible self-dealing. *Id.* at 10-12. Further, Andrews argues that the fee award should be deferred until the actual number of redeemed coupons is known, at the end of the claims period. *Id.* at 11-12.

---

[4] On May 6, 2015, Plaintiffs submitted a Supplement to their Motion for Attorney Fees, stating that class counsel had spent 316.4 additional hours of time on this case, for a lodestar of $121,952.00. Doc. #140. Previously, class counsel requested the equivalent total of $2,500,000 in attorney fees, which before the supplement represented a lodestar of $1,178,358.53 with a multiplier of approximately 2.3. Doc. #125 at 2-3.

4

Another objector—Raymond Sterling—stated in an email that the vouchers provided in the settlement are "impossible to use, or minimally, so aggravating to use that people give up, making them of negative value." Doc. #131. Sterling inquired in a separate email why class members have to affirmatively respond to the settlement rather than simply be sent checks: "The hoops that the class action members have to go through are unnecessary and will virtually guarantee a low recovery rate." Doc. #126.

Other objections focused on the large attorney fee award when so few of the class members are likely to follow through with recovery. *See* Doc. #118 (George Markich) ("These kind of cases are legal robbery."); Doc. #117 (Bruce J. Downey II) ("I object to the attorney's fees being requested by Plaintiffs' counsel. It appears that this action was brought for their benefit rather than the plaintiffs."). Another objector (N. Elasali) stated that the charges involved in this lawsuit are common, and that punitive damages "are the only solution to send a message to all these companies to stop charging illegal fees." Doc. #135.

## II.  Discussion

Before the Court are Plaintiffs' Motions for Final Approval of Settlement (Doc. #124), and for Attorney Fees (Doc. #125). The Court considers these Motions in turn, after analyzing Andrews' argument that the proposed settlement is a coupon settlement.

### A.  Not a Coupon Settlement

Andrews' objection to Plaintiffs' Motions for Final Approval of Settlement and Attorney Fees is based largely on the argument that the proposed settlement is a coupon settlement that requires heightened scrutiny under the Class Action Fairness Act ("CAFA"). However, there is no credible indication that the proposed settlement constitutes a coupon settlement, given that every class member has the option to recover 80% of the ACRF charged to that class member in cash. Andrews argues that "offering a cash option does not make the voucher any less of a coupon" because whether "the voucher is a coupon is independent of other types of relief offered to the class." Doc. #133 at 8. However, the Ninth Circuit held recently that a settlement involving

1  Walmart gift cards was not a coupon settlement because it did not require class members to spend
2  their own money, and enabled them to choose from a large number of items to purchase. *In re*
3  *Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015); *see In re Toys R. Us-Del.,*
4  *Inc.*, 295 F.R.D. 438, 459 n.95 (C.D. Cal. 2014) (discussing the differences between coupons and
5  vouchers); *Foos v. Ann, Inc.*, No. 11-cv-2794, 2013 WL 5352969, at *2 (S.D. Cal. Sept. 24, 2013)
6  (declining to apply CAFA to a settlement involving $15 vouchers to Ann Taylor stores because "a
7  voucher is more like a gift card or cash" than a coupon).
8        Here, the actual cash available to any class member in the proposed settlement likewise
9  does not require class members to spend their own money, and does not limit the items the class
10 member can purchase. The Court is therefore satisfied that the proposed settlement—which
11 provides meaningful cash option to all class members—is not a coupon settlement.
12       **B.**    **Final Approval of Settlement**
13       The Ninth Circuit has recognized a "strong judicial policy that favors settlements,
14 particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*,
15 955 F.2d 1268, 1276 (9th Cir. 1992). Once a court has granted preliminary approval of a
16 settlement and ordered notice to be sent to class members, the court can enter final approval of the
17 settlement if it is "fundamentally fair, adequate and reasonable." *Officers for Justice v. Civil Serv.*
18 *Comm'n of City and Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982). However, "class actions
19 'present unique due process concerns for absent class members,' including the risk that class
20 counsel 'may collude with the defendants.'" *Online DVD-Rental Antitrust Litig.*, 779 F.3d at 944
21 (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). "To
22 guard against these dangers, Federal Rule of Civil Procedure 23(e) 'requires court approval of all
23 class action settlements, which may be granted only after a fairness hearing and a determination
24 that the settlement taken as a whole is fair, reasonable, and adequate.'" *Id.* (quoting *In re*
25 *Bluetooth*, 654 F.3d at 946).
26 ///

To assess the fairness of a settlement, courts consider eight factors, including:

(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Id.* (quoting *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).  This is not an exhaustive list, and the "relative degree of importance to be attached to any particular factor will depend upon and be directed by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625.  As discussed in detail below, consideration of these eight factors indicates that final approval of the settlement is warranted.

### 1. Strength of Plaintiff's Case

Plaintiffs argue that the "strength of the case is established by this Court's rulings in Plaintiffs' favor on liability and restitution." Doc. #124 at 14.  Plaintiffs state, however, that the strength of their case on appeal may be unpredictable because (1) the Court granted Defendants' motion for summary judgment as to damages, and (2) on appeal, the Ninth Circuit could reverse the Court's grant of summary judgment in Plaintiffs' favor because the Court acknowledged in *Sobel v. Hertz*, a case involving the same underlying violation, that the statute in question "is an ambiguous and poorly worded statute that is capable of being understood in two or more senses."  No. 3:06-cv-0545, 2007 WL 2710725, at *2 (D. Nev. Sept. 13, 2007).  In short, the proposed settlement would provide plaintiffs immediate relief, whereas an appeal could lead to an unpredictable or adverse result.

It is difficult to assess the strength of Plaintiffs' case with certainty.  However, Defendants represented that litigation will continue if the Court does not approve the settlement.  While this is not itself a reason to deny a motion for final approval of settlement, it is relevant considering that the Court has ruled that the Nevada statute at issue is poorly worded and ambiguous.  It is therefore

7

possible that on appeal, the Ninth Circuit would overturn the Court's finding of liability, which would make recovery for Plaintiffs much less likely. All things considered, the unpredictability of a potential appeal on the effective strength of Plaintiffs' case weighs in favor of approving the settlement.

### 2. Risk, Expense, Complexity, and Likely Duration of Further Litigation

Plaintiffs argue that the risk of further litigation weighs heavily in favor of granting their Motion for Final Approval of Settlement. Doc. #124 at 15-16. Given that class counsel has been involved in this case for nearly nine years, and that Defendants have represented that they will appeal the Court's legal determinations if the settlement is not approved, Plaintiffs predict that this litigation would be "dragged on in the Ninth Circuit for several more years without the Class receiving the immediate and substantial benefit of the Settlement," and potentially without recovering at all. *Id.* at 16. Because denial of the motion for final approval of settlement could cause significant further litigation, and appeals that could disturb the Court's findings, this factor weighs in favor of approving the settlement.

### 3. Risk of Maintaining Class Action Status

This factor was not addressed in detail by the parties' briefs or objections. At the May 12, 2015, Fairness Hearing, Plaintiffs stated that they were not concerned about the potential for losing class certification status. Thus, this factor does not weigh in favor of, or against, final approval.

### 4. Amount Offered in Settlement

The proposed settlement enables each class member to choose between recovery of 80% of the ACRF charged to that class member in cash (with a minimum of $5 recovery), or vouchers providing up to five days of free time and mileage, depending on the amount of ACRF charged to the class member. Class counsel argues that this settlement is valued at more than $19 million in cash, or more than $70 million in vouchers. Doc. #124 at 13-14. Andrews argues that these figures are unreliable because they are based on a 100% recovery, which is extremely unlikely. Doc. #133 at 15-16.

8

At the time of Plaintiffs' Motion, approximately 78,000 class members had opted to recover cash (approximately 60% of respondents), and approximately 52,000 had opted to recover vouchers (approximately 40% of respondents). *Id.* at 16. In *Sobel*, the Court found that there was no basis to find that the class would recover "real value," largely because it was a coupon settlement, but also because the parties did not provide enough information with which the Court could calculate the actual value to the class. Here, Plaintiffs have submitted substantial information to enable the Court to determine the value of the settlement, and that it provides real value to the class—potentially in cash. *See* Doc. #124 at 7, 12-13. Because the settlement provides that class members will recover 80% cash value or vouchers in an amount equal to or in surplus of the ACRF charged to each class member, the amount offered by Defendants weighs in favor of approval.[5]

### 5. Extent of Discovery Completed

When the parties reached a settlement, "both fact and expert discovery were complete, and the Court had ruled on the parties' respective motions for summary judgment." Doc. #124 at 17. Of course, the Court had already ruled on the parties' motions for summary judgment in *Sobel*, and nonetheless found for a variety of reasons that the settlement did not warrant final approval. Indeed, the Court held that "[b]ecause discovery on damages was in its infancy at the time of settlement, it is highly questionable whether Plaintiffs have sufficient information to make a fully-informed assessment of the strengths, weaknesses and value of their case going forward." *Sobel v. Hertz Corp.*, No. 3:06-cv-0545, 2011 WL 2559565, at *13 (D. Nev. June 27, 2011).

Here, there is nothing in the record to indicate that the parties have not conducted enough discovery to have a fully-informed assessment of the strengths, weaknesses, and value of their case.

---

[5] Andrews is correct that a 100% response rate is unrealistic. However, the value to the 11% of class members who have registered so far is considerable, given that the settlement gives each class member the option for 80% recovery in cash or full recovery in vouchers. Moreover, the Ninth Circuit considers the value *available* to the class in determining total value, rather than merely the amount redeemed. *See Wear v. Sprint Commc'ns Co.*, No. 2:11-cv-0809, 2013 WL 3108312, at *2 (D. Nev. June 18, 2013) (basing percentage of the fund method of calculating attorney fees on the gross value available to the class members).

Importantly, the proposed settlement provides class members with 80% recovery of the charged fees in cash, or full recovery by voucher. There is minimal ambiguity about what each class member would recover that additional discovery would illuminate. As such, this factor weighs in favor of approval of the settlement.

### 6. Experience and View of Counsel

There is no dispute that this action has been litigated and settled by experienced and competent counsel. Class counsel has obtained an excellent result for class members, given that the Court has ruled in Plaintiffs' favor on liability, remedies, and class certification. Considering the favorable terms of the settlement, the Court has no reason to doubt class counsel's representation that "the Parties' settlement negotiations were in good faith, at arms'-length and were in no way collusive." Doc. #124 at 18. Accordingly, this factor weighs in favor of approval.

### 7. Presence of Governmental Participant

There is no governmental participant. Thus, this factor does not weigh in favor of, or against, final approval.

### 8. Reaction of the Class

Plaintiffs argue that this factor weighs strongly in favor of approving the settlement because nearly 130,000 class members have already signed up for cash or voucher recovery, while only a handful have filed objections. Doc. #124 at 19. In fact, more than 11% of class members had registered to receive either cash or vouchers under the settlement as of April 27, 2015, the date Defendants filed their Reply to Objections to the Motion for Approval of Settlement. Doc. #137 at 10. Only six class members have objected to the proposed settlement, and approximately 1000—less than one percent of those who responded—have opted out for reasons unknown to the parties or the Court.

Courts have entered final approval of settlements of class action lawsuits with much lower response rate than eleven percent. *See Online DVD-Rental Antitrust Litig.*, 779 F.3d at 941 (upholding final approval of settlement where claims were submitted by less than four percent of

class members); *White v. Experian Info. Solutions, Inc.*, 803 F. Supp. 2d 1086, 1100 (C.D. Cal. 2011) ("[T]his underwhelming response rate [5%] does not mean that the Settlement, on the whole, is not fair, reasonable, and adequate."); *Shames v. Hertz Corp.*, No. 07-cv-2174, 2012 WL 5392159, at *14 (S.D. Cal. Nov. 5, 2012) (finding that a 4.9% response rate did not diminish the fairness of a settlement, and noting that the response rate would be larger at the end of the claim period).

The 11% registration rate to this point, though not high, likewise does not indicate that the proposed settlement is not fair, reasonable, and adequate. Moreover, the dearth of meaningful objections and relatively small number of opt-outs does not cast doubt on what appears to be a beneficial settlement for the class members. Accordingly, this factor weighs in favor of approval of settlement.

Because the majority of factors weigh in favor of approving the settlement, the Court shall grant Plaintiffs' Motion for Final Approval of Settlement.

### C. Motion for Attorney Fees

Defendants have agreed to pay attorney fees and costs up to $2,625,000, of which $125,000 can be applied to costs. The requested $2,500,000 attorney fees is based upon a total lodestar to date of $1,205,134.50, with a multiplier of approximately 2.07. Doc. #140 at 2.

Andrews argues that the attorney fee included in the proposed settlement is unreasonably high compared to the recovery of class members, and that the requested fee shows signs of self-dealing. Doc. #133 at 12. The Ninth Circuit has acknowledged that self-dealing "concerns warrant special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998). "If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have obtained." *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003). The necessary

inquiry is therefore whether the requested fee is reasonable in light of reliable methods for calculating reasonable attorney fees, and whether signs of impermissible self-dealing are present.

### 1. Application of the Lodestar Method

Plaintiffs argue that application of attorney fees based on the lodestar method is appropriate because class counsel negotiated its fee award separately from the common fund that was created, and the figure was therefore not calculated based on a percentage of the fund. Andrews argues that the Court must consider attorney fees under the parameters of CAFA, 28 U.S.C. § 1712, because the value of the settlement is based partially on vouchers. However, CAFA § 1712 only applies to analysis of attorney fee awards in coupon settlements. As discussed above, the proposed settlement is not a coupon settlement, largely because all class members have the option to recover cash. Thus, the Court need not calculate the attorney fee under CAFA § 1712. *See Shames*, 2012 WL 5392159, at *16 n.14 (rejecting the argument that a cash option does not change the status of a coupon settlement because "Section 1712(c) addresses calculation of attorneys' fees in a settlement that involves 'an award of coupons to class members and also provides for *equitable relief, including injunctive relief*,' (emphasis added), not monetary relief in the form of cash payments").

The Nevada Supreme Court has recognized that in determining the amount of fees to award, a court's "analysis may begin with any method rationally designed to calculate a reasonable amount, including those based on a 'lodestar' amount or a contingency fee." *Schuette v. Beazer Homes Holdings Corp.*, 124 P.3d 530, 549 (Nev. 2005). Once the lodestar has been determined—by multiplying the number of hours reasonably spent in the litigation by the reasonable hourly rates charged—Nevada law requires a court to consider four factors to determine whether the requested attorney fee is reasonable:

> (1) the qualities of the advocate: his ability, his training, education, experience, professional standing and skill; (2) the character of the work to be done: its difficulty, its intricacy, its importance, time and skill required, the responsibility imposed and the prominence and character of the parties where they affect the importance of the litigation; (3) the work actually performed by the lawyer: the skill, time and attention given to the work; (4) the result: whether the attorney was successful and what benefits were derived.

*Id.* at 549 n.100. None of the objectors addressed these factors in detail. But given the fact that the Court ruled in Plaintiffs' favor on liability, remedies, and class certification, the Court finds that the *Schuette* factors support an award of a reasonable lodestar with an appropriate multiplier.

### 2. Lodestar Multiplier

The proposed settlement's attorney fee award represents a lodestar of $1,205,134.50, with a multiplier of approximately 2.07. District courts have discretion to apply the lodestar method and add a multiplier "to reward attorneys for taking the risk of non-payment." *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994). Courts consider a variety of factors to determine the appropriate multiplier, "including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *In re Bluetooth*, 654 F.3d at 942; *see Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (approving a 3.65 multiplier where class counsel faced a significant risk of loss and the litigation was complex and drawn out).[6] In *Sobel*, which involved the same underlying violation, this Court approved a lodestar of $3,135,269.00 with a 2.0 multiplier—for a total of $6,270,538.00 in attorney fees—due to "the amount of risk adopted by class counsel, the drawn-out nature of the litigation and extent of work performed by class counsel, the favorable results obtained, and class counsel's continuing responsibilities."[7] 53 F. Supp. 3d at 1331.

As in *Sobel*, the Court finds that applying a multiplier of 2.07 to the requested lodestar is reasonable given the amount of risk adopted by class counsel, the drawn-out nature of the litigation and extent of work performed by class counsel, and the favorable results obtained. Andrews'

///

---

[6] *Vizcaino* notes that in common fund cases worth between $50 and $200 million between 1996 and 2001, multipliers ranged from 1.2 to 19.6, with the majority falling between 1.2 and 4.0. 290 F.3d at 1052.

[7] The Court also granted Plaintiffs leave to file additional fee and/or expense petitions if such fees accrued based on any appeals. *Sobel*, 53 F. Supp. 3d at 1335. Prior to granting attorney fees in *Sobel*, the Court denied the parties' motions for final approval of settlement, largely because the *Sobel* settlement was a coupon settlement. *Sobel v. Hertz Corp.*, No. 3:06-cv-0545, 2011 WL 2559565, at *11-12 (D. Nev. June 27, 2011).

remaining arguments are that the percentage of the fund cross check indicates that the requested fee is excessive, and that the settlement's "clear sailing" provision shows signs of self-dealing.

### 3. Clear Sailing Provision

The clear sailing provision in the proposed settlement provides that Defendants will not oppose an attorney fee request of up to $2,500,000, and costs of $125,000. "[T]he very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class." *In re Bluetooth*, 654 F.3d at 948 (quoting *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991)). This Court held in *Sobel* that generally, "the separate negotiation of the class recovery and attorneys' fees does tend to mitigate the potential conflict of interest between counsel and the class." 2011 WL 2559565, at *14. The Court added that this principle was undermined, however, "by the settlement's inclusion of a clear sailing provision on attorneys' fees and by Class Counsel's position that fees should be calculated and awarded without regard to the value of the class recovery." *Id.*

Plaintiffs emphasize that the settlement is not contingent on class counsel recovering the full $2,625,000 in fees and costs, and that the clear sailing provision "reflects a determination by Defendants that setting a cap on what Plaintiffs' Counsel could request was worth agreeing not to challenge a request at that amount." Doc. #138 at 2. While the Court disproved of the clear sailing provision in *Sobel*, that settlement was a strict coupon settlement and did not produce "real value" for the class. 2011 WL 2559565, at *13. Moreover, clear sailing provisions are not automatically rejected. *In re Bluetooth*, 654 F.3d at 946-47 (noting that there is less of a chance of self-dealing by class counsel if the settlement is negotiated after class certification). Finally, the Court indicated in *Sobel* that a clear sailing provision should be considered along with a percentage of the fund cross check. 2011 WL 2559565, at *14 (criticizing class counsel for calculating the award "without regard to the value of the class recovery"). As such, a clear sailing provision would be acceptable if it represents a reasonable attorney fee based on a percentage of the fund cross check.

///

### 4. Percentage of the Fund Cross Check

"[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *In re Bluetooth*, 654 F.3d at 942. "Just as the lodestar method can 'confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate,' the percentage-of-recovery method can likewise 'be used to assure that counsel's fee does not dwarf class recovery.'" *Id.* at 945 (quoting *In re Coordinated Pretrial Proceedings*, 109 F.3d 602, 607 (9th Cir. 1997)). Fees larger than the benchmark may be appropriate when class counsel achieves an excellent result after representing the class for a long period of time. *See, e.g.*, *Szymborsld v. Ormat Techs. Inc.*, No. 3:10-cv-0132, 2012 WL 4960098, at *3 (D. Nev. Oct. 16, 2012) ("In this case, thirty percent of the Settlement Amount does not seem an extraordinary or extravagant fee for counsel. Plaintiffs' counsel have litigated this case for more than two years without recompense until now.").

The parties dispute whether the percentage of the fund cross check should be calculated based on the total amount *available to the class* under the proposed settlement, or the amount *actually recovered*. "Under the percentage-of-the-fund method, it is appropriate to base the percentage on the gross cash benefits available for class members to claim, plus the additional benefits conferred on the class by the Settling Defendants' separate payment of attorneys' fees and expenses, and the expenses of administration." *Wear v. Sprint Commc'ns Co.*, No. 2:11-cv-0809, 2013 WL 3108312, at *2 (D. Nev. June 18, 2013) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 479 (1980)). In *Boeing*, the Supreme Court "concluded that the attorneys for a successful class may recover a fee based on the entire common fund created for the class, even if some class members make no claims against the fund so that money remains in it that otherwise would be returned to the defendants." *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997); *see also Lopez v. Youngblood*, No. 07-0474, 2011 WL 10483569, at *12 (E.D. Cal. Sept. 2, 2011) ("It is well established that, in claims made or class reversion cases where there is a maximum fund,

///

and unclaimed funds revert to the defendant, it is appropriate to award class fund attorneys' fees based on the gross settlement fund.").

Andrews argues that class counsel's fee should be calculated based on the amount actually recovered by the class, rather than the total amount recoverable. *See Redman v. Radioshack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014) ("The ratio that is relevant to assessing the reasonableness of the attorneys' fee that the parties agreed to is the ratio of (1) the fee to (2) the fee plus what the class members received."). However, the weight of precedent in this district and the Ninth Circuit favors considering the total amount available to the class, and the Ninth Circuit held recently that "the choice of whether to base an attorneys' fee award on either net or gross recovery should not make a difference so long as the end result is reasonable." *Online DVD-Rental Antitrust Litig.*, 779 F.3d at 953 (quoting *Staton*, 327 F.3d at 974).

Based on the foregoing, the Court finds that the percentage of the fund cross check should be calculated based on the total amount available to the class, rather than the amount actually recovered. Thus, the central question before the Court is whether class counsel's requested attorney fees are reasonable compared to the total recovery available to class members. To prevent any danger associated with overvaluing a settlement that is based in part on vouchers, the Court has conducted its calculation of the value of the settlement only on the much lower figure for if every class member chose cash recovery,[8] because all class members had that option.

The Court conducts its percentage of the fund cross check as follows. If all class members had received cash, the total amount available to class members would have been $19,344,653.98. The attorney fee requested by class counsel is $2,500,000. The reimbursement of costs requested by class counsel is $96,913.43. Administrative costs assumed by Defendants in serving notice to the class totaled $804,339.95. These figures result in a total potential cash responsibility for

---

[8] Plaintiffs represent that "if every class member were to elect vouchers, the value of the fund could reach approximately $71,309,640 million in value." Doc. #125 at 8. Class counsel's requested attorney fee represents 3.3% of this figure.

1  Defendants of $22,745,907.36.[9]  Class counsel's requested attorney fee award represents 11% of
2  this figure, well below the 25% benchmark.  Thus, under the calculation based on the total amount
3  available to class members, class counsel's requested attorney fee award is reasonable.

4        Even if the Court conducted the percentage of the fund cross check based on the total
5  amount *actually recovered* by the class, as proposed by Andrews, the fee award would be within
6  the range of reasonable attorney fees for cases in which class counsel expended considerable time
7  and achieved an excellent result.  *See, e.g.*, *Szymborsld*, 2012 WL 4960098, at *3 (finding that
8  attorney fees worth 30% of the settlement amount was reasonable where class counsel litigated the
9  case for two years without compensation).  Here, the value of the voucher recovery claimed to this
10 point is $3,243,680.00.  The value of the cash recovery claimed to this point is $1,436,795.98.
11 Added to class counsel's requested fee award and costs, these figures result in a total responsibility
12 for Defendants (so far) of $8,081,729.36.  Class counsel's requested fee award represents 30.9% of
13 this figure.  Given the fact that class counsel has achieved strong results for the class over its nine
14 years of involvement with this case, this attorney fee award is not unreasonable.  *See Online DVD-*
15 *Rental Antitrust Litig.*, 779 F.3d at 953 ("[T]he choice of whether to base an attorneys' fee award
16 on either net or gross recovery should not make a difference so long as the end result is
17 reasonable.") (quoting *Staton*, 327 F.3d at 974).

18       Whether the percentage of the fund cross check is calculated based on the total amount
19 available to the class, or the amount actually recovered, the Court finds that the attorney fee
20 requested is reasonable.  Accordingly, the Court shall grant Plaintiffs' Motion for Attorney Fees
21 and Costs.  The Court notes that class counsel's obligations to the class will continue after final
22 approval of settlement.  Plaintiffs represented at the May 12, 2015, Fairness Hearing, for example,

---

[9] In the Ninth Circuit, district courts have discretion to include administrative costs in the total amount paid by defendants for purposes of the percentage of the fund cross check.  *See Online DVD-Rental Antitrust Litig.*, 779 F.3d at 953 ("The district court did not err in calculating the attorneys' fees award by calculating it as a percentage of the total settlement fund, including notice and administrative costs, and litigation expenses.").  The Court has included administrative costs in its calculations here because these funds are part of the total amount paid by Defendants in the settlement.

that class counsel will continue to follow-up with class members through the claims period and ensure that class recovery is as large as possible. The Court fully expects class counsel to remain available to class members, and to facilitate any further claims under the settlement.

### D. Incentive Awards

Plaintiffs request incentive awards of $10,000 for each of the two named Plaintiffs, Lee and Bissonette. Doc. #124 at 8. Incentive awards are well established in class actions as compensation for a named plaintiff's often extensive involvement in the litigation. *See In re Mego Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000); *Sobel*, 53 F. Supp. 3d at 1332 (awarding $10,000 incentive awards to two named plaintiffs).

The Court finds that the requested incentive awards are reasonable and appropriate. Importantly, the incentive awards were negotiated after the parties agreed to a settlement to benefit the entire class, so they will not impact the recovery available to other class members. Moreover, Lee and Bissonette have been intimately involved in this litigation, working to ensure that the case was successful. Without their integral efforts, no class member would recover. The Court therefore approves payment of the $10,000 incentive awards to Plaintiffs Lee and Bissonette.

### III. Conclusion

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Final Approval of Settlement (Doc. #124) is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Attorney Fees, Costs, and Incentive Awards (Doc. #125) is GRANTED. Plaintiffs shall recover $2,500,000 in attorney fees from Defendants, which shall include the $10,000 incentive awards for named Plaintiffs Lee and Bissonette. Plaintiffs shall also recover $96,913.43 in costs from Defendants.

IT IS SO ORDERED.

DATED this 15th day of May, 2015.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE